George W. MEADOWS, Petitioner-Appellant,

v.

E. L. MAXWELL, Warden, Ohio Penitentiary, Respondent-Appellee.

No. 17015.

United States Court of Appeals
Sixth Circuit.

Feb. 2, 1967.

Jack L. Johnson (Court appointed), Columbus, Ohio, for appellant.

Leo J. Conway, Asst. Atty. Gen., Columbus, Ohio, for appellee, William B. Saxbe, Atty. Gen., Columbus, Ohio, on brief.

Before CELEBREZZE and PECK, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

On October 9, 1958, George W. Meadows, petitioner-appellant, was arraigned in the Common Pleas Court of Cuyahoga County, Ohio, on an indictment returned by the grand jury charging him, in three counts, with sexual offenses alleged to have occurred on July 6, 1958. Specifically the counts were forcibly raping his daughter, committing adultery by having sexual intercourse with his daughter and taking indecent liberties with his daughter, age twelve years, in violation of Sec-

tions 2905.02,[1] 2905.07[2] and 2903.01,[3] respectively, of the Ohio Revised Code. The offenses were all committed against the same person and apparently arise out of the same act.

Meadows, hereinafter referred to as petitioner, on arraignment, pleaded guilty to the indictment, as charged. In a journal entry of the court it was recited that the petitioner was brought into court in custody of the sheriff, "and was informed of his constitutional rights, * * *". He was referred to the Psychiatric Clinic for examination and report and was remanded to the county jail. The petitioner was sentenced on October 27, 1958. The sentence, after referring to the counts and the section numbers under which they were framed, recited, "It is therefore the sentence of the Court that he be imprisoned in the penitentiary of this State, * * * until legally discharged." The sentences were to run concurrently. This sentence was construed to be a life sentence, in accordance with the penalty provided by Section 2905.02.

The Supreme Court of Ohio denied a petition for a writ of habeas corpus upon the report of a hearing by Master Commissioners of the Court. Meadows v. Maxwell, 175 Ohio St. 213, 192 N.E.2d 781. Thereafter, upon an evidentiary hearing, a petition for habeas corpus was denied in the United States District Court for the Southern District of Ohio, Eastern Division. (Section 2241(a), Title 28, U.S.C.) This appeal followed.

The petitioner alleged in an amended application for a writ of habeas corpus

---

1. "No person shall have carnal knowledge of his daughter, sister, or a female person under twelve years of age, forcibly and against her will. Whoever violates this section shall be imprisoned for life."

2. "No persons, being nearer of kin, by consanguinity or affinity, than cousins, having knowledge of such relationship, shall commit adultery or fornication together.
   "Whoever violates this section shall be imprisoned not less than one nor more than ten years."

3. "No person over the age of eighteen years shall assault a child under the age of sixteen years, and willfully take indecent and improper liberties with the person of such child, without committing or intending to commit the crime of rape upon such child, or willfully make improper exposures of his person in the presence of such child.
   "Whoever violates this section is guilty of felonious assault and shall be fined not less than five hundred nor more than five thousand dollars or imprisoned not less than one nor more than ten years, or both."

in the District Court that he was not informed of the nature of the charge against him, of the fact that he could receive a life sentence and of his constitutional right to have a lawyer. It was stipulated at the hearing before the court that there was no record of the proceedings before the trial court at the time of the plea of guilty or at the time of the sentence. It was also stipulated that the file in the trial court did not show any written waiver of counsel signed by petitioner.

The district judge had before him the oral testimony of the petitioner and a deposition and an affidavit of the trial judge. The petitioner had not gone beyond the fifth grade in school and could scarcely read or write. He was held in jail under $5000 bond for about three months before he was arraigned in court on the indictment. During this incarceration he tried on two different occasions, to get a lawyer. He was told each time by a different lawyer that it would require the payment of a fee of $500 to look into his case. The petitioner had no money with which to meet these demands.

The petitioner testified that he did not know the nature of the crime with which he was charged nor the seriousness of it, that is, that he could be sentenced to the penitentiary during his natural life. He testified that neither the seriousness of the crime was explained to him nor was he advised that he had a right to have a lawyer represent him. He further testified that the trial judge, at the opening of the session of court at which he was arraigned, announced that everyone who pleaded guilty would be placed on probation. The district judge did not believe this, nor do we. We are quite satisfied that the trial judge made no such statement. However, we do not necessarily think that the petitioner was lying. With his limited education, he may have misunderstood what was said and, after a lapse of time, what was said might be vague in his mind. We attach no importance to the statement either for or against the petitioner. What is certain is that he was not represented by counsel at the time he pleaded guilty and received a life sentence.

From the affidavit and deposition of the trial judge, we learn that the petitioner was one of thirty-six prisoners brought into court by the sheriff for arraignment on October 9, 1958. The petitioner was number twenty-seven on the judge's list and he was probably called in that order. The trial judge had no independent recollection of the petitioner's appearance before him.

The trial judge testified that his procedure, at the time of the arraignment, was as follows:

"The accused are brought into the courtroom by the sheriff and his deputies, the presiding judge comes in, at that time, without exception, I explain the purpose of their being here. I explain to them that they at this time will be asked whether they are innocent or guilty of the crime or crimes mentioned in the indictment. I explain that they have a right to counsel at any stage of the procedure in our Court, and if a person is indigent counsel will be appointed for him.

"I explain that each one will be dealt with individually, and that the Court will assure them that their rights will (sic) protected at all times."

\*   \*   \*   \*   \*   \*

"If you plead not guilty you are entitled to a trial by jury; if you plead guilty then it is up to the Court to decide what if any sentence should be passed and how it should be dealt with."

As each prisoner is called, he steps forward and the judge asks,

"(H)ave you read the indictment? Do you understand it? Will the Clerk read the indictment? If there is any question about it the Clerk will read the indictment. Then I say, are you prepared to plead in this matter? If you understand the charge, are you prepared to plead? How do you plead?"

If anyone pleads not guilty, the judge then asks if he has counsel or if he wants

counsel appointed for him. On this occasion counsel was appointed for sixteen of the thirty-six who appeared in court. The trial judge did refer the petitioner to the probation department for investigation and report. However, he made no statement to the effect that all who pleaded guilty would be given probation. The judge apparently had the probation report before him at the time he testified on deposition. From this report it appears that the petitioner admitted that he had had sexual relations with his twelve-year-old step-daughter in the past and again on the date alleged in the indictment.

The district judge found, as did the Supreme Court of Ohio, that the statement in the court order of October 9th, that the petitioner was informed of his constitutional rights satisfied the requirement in that respect. We are concerned whether, under the facts of this case, due process can be satisfied where a man of limited education is sentenced to life imprisonment without the advice of counsel.

Until Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), it was held that the Sixth Amendment[4] right to counsel did not apply to the States. Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595. While in Betts it was assumed that a provision of the Bill of Rights which is " 'fundamental and essential to a fair trial' * * * is made obligatory upon the States by the Fourteenth Amendment," it was held that the Sixth Amendment's guarantee of counsel was not such a fundamental right. Gideon, at p. 339, 83 S.Ct. at 793, overruled Betts.

■ We conclude that under the facts as they appear to us in this case the trial judge should have appointed counsel for the petitioner unless such appointment was intelligently and understandingly waived. We consider now the question of waiver. In Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), the Court said:

> "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record."

Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), arose in a habeas corpus case out of a conviction in a state court of Florida. The offense was the same as in the case before us. No attorney was appointed to represent the petitioner and his case was tried to a jury. The Court said at p. 512, 82 S.Ct. at p. 888:

> "We hold that petitioner's case was one in which the assistance of counsel, unless intelligently and understandingly waived by him, was a right guaranteed him by the Fourteenth Amendment. * * * But it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request."

In Von Moltke v. Gillies, 332 U.S. 708, at p. 723, 68 S.Ct. 316, at p. 323, 92 L.Ed. 309 (1948), a case arising out of an appeal from this Court,[5] Mr. Justice Black,

---

4. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence."

5. Von Moltke v. Gillies, 6 Cir., 161 F.2d 113.

in an opinion concurred in by Justices Douglas, Murphy and Rutledge, said:

" 'This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."

While this was not an opinion of the Court, being concurred in by only three other members of the Court, it has frequently been cited on the subject of waiver and substantially states the test or requirement for waiver of counsel. E. g. Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 118, 76 S.Ct. 223, 100 L.Ed. 126; Moore v. State of Michigan, 355 U.S. 155, 161, 78 S.Ct. 191, 2 L.Ed.2d 167; Sanders v. United States, 205 F.2d 399, 401 (C.A. 5); Gannon v. United States, 208 F.2d 772, 774 (C.A. 6); Smith v. United States, 216 F. 2d 724, 726 (C.A. 5); Vellky v. United States, 279 F.2d 697, 698 (C.A. 6); Twining v. United States, 321 F.2d 432, 434–435 (C.A. 5); Day v. United States, 357 F.2d 907, 910 (C.A. 7); Burch v. United States, 359 F.2d 69, 72 (C.A. 8).

The statement in the order of October 9th, that the petitioner "was informed of his consitutional rights, * * *" is conclusory and we cannot agree with the District Court that this satisfies the requirement that the petitioner's rights were fully explained to him. Nor can we find from the deposition of the trial judge that what, in practice, he customarily explained to defendants was sufficient in a case of the severity of the one now before us. We cannot satisfy ourselves from this statement that the nature of the crimes with which the petitioner was charged was explained to him or that he understood that he could receive a life sentence. An attorney should have been appointed, without request, to represent the petitioner and to advise him of his constitutional rights before he was asked to enter a plea to an indictment carrying with it a life sentence. The petitioner could waive counsel at any stage of the proceedings, but only after counsel was intelligently and understandingly waived, as outlined herein, should a plea of guilty have been accepted. A person ought not be sentenced to imprisonment for life in a routine manner.

In arriving at this conclusion we do not attempt to make a general rule relative to the appointment of counsel. Each case must be governed by its own particular facts. We hold that under the facts of this case counsel should have been appointed to represent the petitioner before he pleaded guilty, unless such counsel was intelligently and understandingly waived.

We reverse and remand the case to the District Court with instructions to remand it to the Common Pleas Court of Cuyahoga County for vacation of the plea of guilty and to re-try the case within sixty days or release the petitioner.