**Ralph Arnold STROETZ, 8910A, Petitioner,**

**v.**

**John C. BURKE, Warden, Wisconsin State Prison, Respondent.**

**No. 65–C–280.**

United States District Court E. D. Wisconsin.

April 18, 1967.

James P. Burns, Milwaukee, Wis., for petitioner.

William A. Platz, Asst. Atty. Gen., Madison, Wis., for defendant.

## OPINION

TEHAN, Chief Judge.

This is a petition for writ of habeas corpus in which petitioner, Ralph Arnold Stroetz, an inmate of Wisconsin State Prison, claims that he is held in custody in violation of his rights to due process of law under the Constitution of the United States.

On June 25, 1954, petitioner was convicted in the Municipal Court of Outagamie County, the Honorable Oscar J. Schmiege, municipal judge presiding, on his plea of guilty of the crime of sodomy in violation of § 351.40 Wis.Stats., 1953, and was committed to the Wisconsin state department of public welfare for a presentence social, physical and mental examination, pursuant to § 340.485(2) Wis. Stats., 1953 (now § 959.15(2), Wis. Stats.). The State department of public welfare reported to the said court on August 20, 1954 that petitioner was in need of specialized treatment for his mental aberrations. Thereafter he was committed to the State department of public welfare at the Wisconsin State Prison, Waupun, Wisconsin, on September 17, 1954 by the same court for treatment in accordance with the provisions of § 340.485(6) Wis.Stats., 1953, (now § 959.15(6) Wis.Stats.) commonly known as the Sex Deviate Act (hereinafter referred to as the Act).

Section 340.485(12) Wis.Stats., 1953 (now § 959.15(12) Wis.Stats.) provides that a defendant committed under the Act shall be discharged at the end of the maximum term provided by law for the offense for which he was committed (at the time of the offense in this case, the maximum penalty for the crime of sodomy was five years) minus good time unless the department orders that the defendant remain subject to the control of the department and the committing court upon application for review thereof, after a hearing, at which defendant is accorded the right to counsel and to produce witnesses, finds that the discharge of the person committed would be dangerous to the public because of his mental or physical deficiencies and confirms the order for continuing control. On November 5, 1958, the department made such an order for continuing control and applied to the Municipal Court of Outagamie County for review. Following a hearing on March 20, 1959 before the Municipal Court and the committing

judge at which testimony was taken the court confirmed the order of the department. Petitioner was not represented by counsel at that hearing.

On January 22, 1964, the department made a second order for continuing control and again made application to the County Court (formerly the Municipal Court) of Outagamie County for review of said order. Thereafter, on February 14, 1964, the said court, the Honorable Gustave J. Keller, judge presiding, held a hearing at which petitioner was represented by court-appointed counsel, and confirmed the order of the department as provided by § 959.15(14) and (15), Wis.Stats.

In his *pro se* petition to this court, petitioner claimed that (1) he did not intelligently waive his right to counsel at the time of his arraignment and plea because of statements made by the District Attorney; (2) that at the 1959 hearing on extension of control he was not represented by counsel nor advised of said rights; (3) that the 1964 hearing is invalid because of the violation of due process at the 1959 hearing and that the two extensions of the original sentence constituted double jeopardy.

Prior to proceeding here, petitioner filed his petition for writ of habeas corpus with the Wisconsin State Supreme Court. On October 16, 1964, the Wisconsin Supreme Court issued an order to show cause why the writ should not issue, to which the respondent made return on November 10, 1964. Thereafter, the Wisconsin Supreme Court appointed Attorney Peter Nelson of Appleton, Wisconsin, as counsel for petitioner, and referred the matter to the Circuit Court for Outagamie County to hear, try and determine the issues of fact raised by the pleadings. A full evidentiary hearing was had before the Circuit Court on January 22, 1965, the Honorable A. W. Parnell, Circuit Judge, presiding. On January 26, 1965, the Honorable A. W. Parnell made findings of fact, in which in pertinent part he made the following ultimate findings:

(1) That the State of Wisconsin had met its burden of proof that the plaintiff sufficiently understood his right to counsel at the time of the original conviction, intelligently waived his rights and voluntarily entered a plea of guilty;

(2) That at the first hearing for extension of control on March 20, 1959, the State failed to meet its burden of proof to satisfy the court that the petitioner sufficiently understood his right in connection with the hearing and intelligently waived his rights to counsel, medical testimony and process for calling witnesses.

No issues of fact concerning the second hearing in 1964 on review of the department of public welfare's order for continuing control, were submitted to Judge Parnell, as it is undisputed that at the second hearing the petitioner was afforded counsel and the right to call witnesses.

In a per curiam opinion, State ex rel. Stroetz v. Burke (1965) 28 Wis.2d 195, 136 N.W.2d 829, the Wisconsin Supreme Court confirmed the findings of fact of Judge Parnell, and held as a matter of law that the petitioner was denied his statutory and constitutional rights to be represented by counsel at the 1959 hearing for extension of control. However, a majority of the court concluded that the defect was non-jurisdictional and was remedied by the second court hearing in 1964, at which petitioner was afforded his right to counsel. Accordingly, the findings of the Circuit Court were confirmed and the petition for habeas corpus denied.

Respondent is represented by William A. Platz, assistant attorney general for the State of Wisconsin. This court appointed James A. Burns, a member of the Milwaukee Bar, to represent petitioner. The parties have agreed that no further evidentiary hearing is needed and the cause has been submitted on the pleadings of the parties, the transcript of the Wisconsin State court records and the exhibits and on the written briefs and oral argument of counsel.

## THE 1954 CRIMINAL PROCEEDINGS.

At the time of his conviction in 1954, petitioner was 25 years of age, and a graduate of Kaukauna High School where his grades had been low. He had attended three semesters at Carthage College and the University of Wisconsin Extension Division at Menasha, but had not been able to maintain the scholastic pace. At the time of his arrest, petitioner was employed as a laborer at Marathon Corporation in Menasha, earning $55.00 to $62.00 per week. Prior to the instant arrest, petitioner had been arrested for criminal assault and battery and for drunken driving and received probationary sentences. Petitioner had also appeared before a justice of the peace on some minor incident or infraction, the nature of which is not disclosed by the record.

On June 22, 1954, the petitioner was brought by police officers to the office of the district attorney for Outagamie County, Attorney Frederick E. Froehlich, for questioning. A question and answer statement was obtained from the petitioner, in which he freely admitted the incidents comprising the offense. Two days later, on June 24, 1954, a written complaint was filed in Municipal Court for Outagamie County, signed by Officer Engerson, charging the petitioner with the crime of sodomy and a warrant was issued for his arrest. On June 25, 1954, the warrant was filed and petitioner appeared in Municipal Court, Honorable Oscar J. Schmiege presiding, without counsel, and pled guilty to the complaint and to the information subsequently filed. The transcript of the proceedings discloses that the court did not advise the petitioner that the crime with which he was charged was a felony nor did he apprise him of the range of punishment for the crime. It further shows that he was asked to plead to the "complaint" before he was advised of his right to retain an attorney. Thereafter, the following occurred:

"At this time the Court advises you that you can retain an attorney to represent you. Do you wish to retain an attorney before you plea to the Information?

A. No.

Q. If you are indigent the Court will appoint an attorney for you. Do you wish to retain an attorney?

A. No.

(At which time the Information was read to the Defendant)

Q. Let the record show the defendant states he—the defendant states in open court he does not wish to retain a lawyer before pleading to the Information. The defendant was duly advised of his legal and constitutional rights. What is your plea to the reading of the Information?

A. Guilty."

\* \* \* \*

The court then asked the district attorney for the facts and the district attorney recounted the incidents. Thereafter the court ordered:

"By the Court:

The Court at this time orders you to be transferred to the State Department of Public Welfare for a presentence, social, physical and mental examination. The Court orders the sheriff to transport you to the State Department of Public Welfare at Waupun. This is under section 340.-485(2) of the Statutes."

Petitioner claimed in his pleading here and before the Wisconsin Supreme Court that he waived his right to counsel in open court because he had been advised by the district attorney that if he pled guilty he would be sent away for six months treatment and then be released. Thus the main thrust of the testimony elicited at the evidentiary hearing before Judge Parnell was directed to the disputed issue of whether the district attorney made the aforementioned representations as to the consequences of a plea of guilty attributed to him by petitioner.

The only witnesses who testified with respect to this issue were the petitioner in his own behalf and the district attor-

ney who denied that he made any statements or representations that if petitioner waived his right to an attorney and pleaded guilty he would be sent away for treatment for six months and then released. Moreover, the district attorney testified that he never discussed the matter of an attorney with petitioner at all nor did he advise petitioner of the possible penalties he faced if he pleaded guilty. It thus appears undisputed in the record that neither the court nor the district attorney nor anyone else advised the petitioner of the range of punishment the offense with which he was charged carried.

Petitioner, on the other hand, in addition to testifying that he waived his right to counsel and pleaded guilty because of the representation of the district attorney that if he pleaded guilty he would go away for six months treatment and then be released, also testified when asked if anyone had ever told him the maximum penalty for sodomy "I can say in all truthfulness that if they did I was so nervous and upset that I can't recall it."

He also testified that it did not enter his mind that he might receive a prison sentence as a result of his plea.

Judge Parnell resolved the question of the credibility of petitioner's testimony and that of the district attorney against the petitioner. He found that

> * * * * * *
> "3. The petitioner did not request of the District Attorney that he be furished counsel at any time before arraignment, trial, plea, or sentence.
>
> 4. The District Attorney did not advise the Petitioner that he did not need counsel.
>
> 5. The District Attorney did not tell Petitioner that if he asked for counsel, or if counsel was appointed for him, the newspaper would make a big splash of the incident and cause added embarrassment to Petitioner and his mother.
>
> 6. The District Attorney did not represent to the Petitioner that if he

pleaded guilty without representation he would be sent for a six-month period of training, treatment and rehabilitation and then be released.

> 7. The evidence is impressive that Petitioner appreciated the revolting nature of his conceded offenses, was embarrassed and remorseful, and wanted the matter of trial, plea and sentence over with as quickly and as quietly as possible. The charges against the District Attorney are unsubstantiated and emphatically denied by him. The evidence indicates that the District Attorney had only two contacts with the Petitioner, first when he interviewed him and second when he presented the statement for signature. On the first occasion there were several witnesses present. The signing of the statement occurred in the county jail. The court is persuaded by the recognized integrity, the professional conduct of the District Attorney, and the history of his experience and tradition as District Attorney, that there is more credence in his denials than there is in the charges.
>
> 8. The Petitioner was not induced to waive counsel and enter a plea of guilty by any statement, representation or promise of the District Attorney."
>
> * * * *

█ It is not our province to substitute our judgment for that of the finder of fact. The parties have stipulated that the proceedings before Judge Parnell and the findings of fact made by him shall stand as the record on the issues raised here.

█ Judge Parnell, however, made no affirmative finding with respect to whether petitioner was informed by the court, the district attorney, or anyone else of the range of punishment the offense with which he was charged carried —either under the Sex Deviate Act or the regular criminal statute. Nor did he make any finding as to whether the petitioner in fact knew the penalties which could be imposed if he were convicted. And a careful scrutiny of the record

compels this court to make the additional findings that:

1. No person advised the petitioner of the possible punishment he faced—either under the regular criminal statute or the Sex Deviate Act.

2. That the petitioner, in fact, did not know the possible penalties that could be imposed.

 Petitioner had never before been convicted of a crime of this nature and his previous convictions were for entirely dissimilar minor offenses for which he received probationary sentences. We also take judicial notice of the fact that at the time of the conviction the Wisconsin Sex Deviate Act had been "on the books" for only a few years,[1] and its complex provisions could scarcely have been a matter of common knowledge.

We reach then the question of whether under the proper federal standards, the conclusion of Judge Parnell, as adopted by the Wisconsin Supreme Court, namely, that the "petitioner sufficiently understood his rights to counsel, intelligently waived them and voluntarily entered a plea of guilty" can be accepted.

In Johnson v. Zerbst (1938) 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, the United States Supreme Court prescribed the standard to apply in determining whether waiver of counsel is valid:

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

In Von Moltke v. Gillies (1948) 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309, the court said:

"To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."

The Seventh Circuit Court of Appeals in applying the federal standards has rejected a rigid and mechanical formula, but instead adopted a flexible standard that takes into consideration the facts of each particular case. In Cox v. Burke (1966) 7 Cir., 361 F.2d 183, at 186, the court stated:

"The concern of due process is fundamental fairness. The question to be asked in determining the legal adequacy of waiver of counsel is whether, in view of the totality of the circumstances of a particular case, it would be unfair because of the accused's lack of understanding to allow the waiver to stand."

 In determining the fairness of allowing a purported waiver of counsel to stand, however, it is our opinion that at the very minimum a defendant must understand not only the nature of the charge but the seriousness of the penalties the law prescribes for the violation. In the instant case, petitioner had no way of knowing whether the infraction carried a penalty of imprisonment for one month or five years, much less that the conviction could lead to confinement for an indeterminate period which could conceivably last the rest of his life. It is noted that based upon the jurisdiction obtained over the person of the defendant, he has already had his liberty curtailed by the State of Wisconsin for thirteen years.

 In recognition of these principles the Supreme Court of Wisconsin has prescribed the duties of a trial court before accepting a plea of guilty and waiver of counsel. See Burnett v. Burke (1964) 22 Wis.2d 486, 126 N.W.2d 91, in which the Supreme Court stated that it was the duty of trial courts to (1)

---

1. The Wisconsin Sex Deviate Act was enacted in 1951.

determine the extent of defendant's education and general comprehension; (2) establish his understanding of the crime and range of punishment; (3) ascertain whether any promises or threats had been made in connection with his appearance, his refusal of counsel and his proposed plea of guilty; (4) alert the petitioner to the possibility that a lawyer may discover defenses or mitigating circumstances; (5) make sure that the defendant understood that if indigent, counsel would be provided at no expense to him. It is significant that Judge Parnell found that at least four of these five propositions before acceptance of a plea of guilty, were not reflected in the record at the time of conviction.[2]

Although in State ex rel. Kline v. Burke (1965) 27 Wis.2d 40, 133 N.W.2d 405, the Wisconsin Supreme Court held that the failure of the trial court to follow its recommendations in *Burnett* did not invalidate the convictions if in fact the defendant's waiver was freely, voluntarily and understandingly made—in this case, the State has failed to establish that the defendant did have such understanding.

We therefore hold that the defendant's complete lack of understanding of the penalties the crime with which he was charged carried renders his purported waiver of counsel constitutionally invalid and impels the conclusion that his conviction was obtained in violation of his rights to due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States.

In view of this conclusion, it is not necessary to consider petitioner's contention that the denial of petitioner's right to counsel at the 1959 judicial review of the department of public welfare's order of continuing control was not constitutionally "cured" by the 1964 hearing.

This construction of the Wisconsin Sex Deviate Act by the court, however, serves to emphasize the seriousness of the con-

sequences of a sex crime conviction in Wisconsin, and makes it all the more imperative that the right of a defendant thus charged to counsel be scrupulously protected in the original proceedings.

For the foregoing reasons, the petition of Ralph Arnold Stroetz for a writ of habeas corpus will be granted, and the petitioner ordered discharged from custody under the present judgment of conviction. Execution of the order will be stayed for a period of thirty days, however, to afford the respondent opportunity to appeal from this ruling.

An order consistent with the foregoing will be entered.

---

2. Finding of Fact, No. 11:
"At least four of the five propositions recommended by the Supreme Court in State ex rel. Burnett v. Burke, 22 Wis.

2d 486, 126 N.W.2d 91 (1964) for consideration by the trial court before acceptance of a plea of guity are not reflected in the record."