**Elmer F. WITTE, Petitioner,**

v.

**John C. BURKE, Warden, Wisconsin State Prison, Respondent.**

**No. 67–C–129(HC).**

United States District Court
W. D. Wisconsin.

March 1, 1968.

Bronson C. La Follette, Atty. Gen., William A. Platz, Asst. Atty. Gen., Madison, Wis., for respondent.

Donald S. Eisenberg, Madison, Wis., for petitioner.

## OPINION

JAMES E. DOYLE, District Judge.

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which petitioner, presently incarcerated at the Wisconsin State Prison, claims that he is being detained in violation of his rights under the Constitution of the United States.

Petitioner was convicted February 17, 1956, on his plea of guilty of taking indecent liberties with his minor daughters in violation of § 351.41, Wis.Stats. (1953) and of incestuous activity in violation of § 351.21, Wis.Stats. (1953). Upon his conviction he was committed to the State Department of Public Welfare for a presentence social, physical and mental examination at the state prison. Having been found to be in need of specialized treatment, petitioner was committed to the State Department of Public Welfare under the Wisconsin Sex Deviate Act (now § 959.15(6), Wis. Stats.).

Section 959.15, Wis.Stats., provides that a defendant committed under the Sex Deviate Act shall be discharged at the end of the maximum term provided by law for the offense for which he was committed, minus good time, unless the committing court, after a hearing at which defendant has the right to counsel and to produce witnesses, finds that the discharge of the person committed would be dangerous to the public because of his mental or physical deficiencies, and orders the commitment continued. On February 14, 1964, petitioner's commitment was ordered continued. Under that order petitioner has remained subject to the control of the Department beyond March 17, 1964, which would normally have been his discharge date.

Petitioner asserts here that he was denied his right to counsel; that he did not render an intelligent waiver of counsel; that his privilege against self-incrimination was violated by coercion in obtaining his confession; that prior to taking his plea of guilty the trial court failed to inform him of the maximum possible penalty which could be imposed; and that he was sentenced under a different statute than the one to which he pleaded guilty.

Leave was granted to file the petition *in forma pauperis*; respondent was directed to respond; and a response was filed. Donald S. Eisenberg, of Madison, was appointed as attorney for petitioner. The court expresses its appreciation to Mr. Eisenberg.

Respondent denies that petitioner has exhausted his state remedies, as required by 28 U.S.C. § 2254(b), with respect to the alleged failure to inform of the maximum possible penalty.

In the course of petitioner's state habeas corpus proceeding an evidentiary hearing was held by the Honorable Henry G. Gergen in the Circuit Court for Jefferson County, Wisconsin. The transcript of that hearing and Judge Gergen's findings of fact are a part of the

record herein. In finding of fact No. 8, Judge Gergen stated, in pertinent part:

"\* \* \* the petitioner understood that the charges were serious and were punishable by prison confinement although he may not have understood the nature and workings of the sex deviate law, sec. 959.15, Stats., or the maximum sentences which the court might impose upon conviction."

Based upon Judge Gergen's findings of fact, the Wisconsin Supreme Court, in Unpublished Opinion #65/24, held that petitioner "knowingly, intelligently and voluntarily waived his right to counsel."

From the record herein it appears that whether failure to inform the defendant of the maximum possible penalty is itself a ground for release has not been raised in the state habeas proceeding. However, insofar as petitioner here asserts that the failure to inform of the maximum possible penalty creates a constitutional infirmity in the waiver of counsel, I hold that petitioner has exhausted the remedies available in the state courts as required by 28 U.S.C. § 2254(b).

In Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948), the court stated:

"The fact that an accused may tell [the judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."

*Von Moltke* is cited approvingly and as authority by the Wisconsin Supreme Court in State ex rel. Burnett v. Burke, 22 Wis.2d 486, 126 N.W.2d 91 (1964). In listing the duties of a trial court pri-

or to accepting a plea of guilty, the court declared at 22 Wis.2d at 494, 126 N.W.2d at 95:

"\* \* \* [I]t is feasible for the trial court to do the following:

"1. \* \* \*

"2. To establish the accused's understanding of the nature of the crime with which he is charged and the range of punishments which it carries."

See also State v. Strickland, 27 Wis.2d 623, 629, 135 N.W.2d 295 (1965).

The *Von Moltke* standards and the federal decisions thereunder were recently reviewed in Spanbauer v. Burke, 374 F.2d 67 (7th Cir. 1966). That study concludes that the *Von Moltke* duties did not replace the waiver of counsel standards as articulated in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In *Zerbst*, the court stated, at 464, 58 S.Ct. at 1023:

"The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

The *Spanbauer* court further concludes that "such applications as there have been of *Von Moltke* to state proceedings have not relied on the literal language or application of the *Von Moltke* standards, but upon the proposition that the trial judge has some duty to make an investigation into the circumstances to determine whether the petitioner had intelligently and competently waived his right to counsel." 374 F.2d at 73. Thus, it appears that the *Von Moltke* duties are not, themselves, constitutional staples to be strictly applied, but rather are merely suggested guidelines for trial judges. However, in Cox v. Burke, 361 F.2d 183, at 186 (7th Cir. 1966), the court stated:

"In some circumstances, the failure to apprise a defendant of the maxi-

mum possible sentence could be a defect creating such unfairness that waiver of counsel is invalid."

Judge Gergen has found: that prior to arraignment petitioner had been informed of his right to counsel by a deputy sheriff, a district attorney, a justice of the peace, and the judge before whom he was arraigned; that these explanations included the statement that counsel would be furnished to him if he was unable to employ counsel; that prior to arraignment petitioner had confessed orally and in writing, and had said that he did not want counsel and wanted to plead guilty and get it over with; and that prior to his pleas of guilty, the charges had been fully explained to petitioner and he fully understood them, and he understood that the charges were serious and punishable by prison confinement. Judge Gergen has refrained from finding that the petitioner was informed, at any time, of the maximum penalties for the alleged offenses, or that the nature or workings of the sex deviate law were explained at any time to petitioner.

I accept Judge Gergen's findings, as did the Supreme Court of Wisconsin.

With respect to the following matters concerning which Judge Gergen made no findings, I consider that I am free to make, and am obliged to make, additional findings, and I now find, from the record: that until his arrest on the charges in question, petitioner had never been arrested, even for a motor vehicle violation, and had never spent any time in jail (Transcript of proceedings before Judge Gergen (hereinafter State Habeas Tr.), p. 10); that petitioner had had eight years of grade school education (State Habeas Tr., p. 22); that petitioner did not know the meaning of the "1–B" or "2–B" draft status which he said he had had during World War II (State Habeas Tr., pp. 22–23); that at the time of his arrest, he was employed at Creamery Package Manufacturing Company at Lake Mills, Wisconsin (State

Habeas Tr., p. 29); that previously he had worked at the Motor Transport Company in Watertown, Wisconsin, at Union Upholstering Company at Jefferson, Wisconsin, and on a farm as a tenant on shares (State Habeas Tr., p. 29). I find generally that petitioner was of limited intelligence, as revealed by the tenor of his testimony before Judge Gergen in the state habeas corpus evidentiary hearing, and of limited schooling; and that he was wholly inexperienced in the workings of criminal courts, laws and procedures. I find that he was arrested and jailed on February 10, 1956 (State Habeas Tr., pp. 10, 50), and that he was not taken before a magistrate until February 16, 1956 (State Habeas Tr., pp. 17, 53–54). I find that no one, in or out of court, prior to petitioner's waiver of counsel in court, explained to him either the maximum penalties for the offenses with which he was charged or the nature or workings of the sex deviate law. Petitioner was 46 years of age at the time he declined counsel; he was married and had six children. (State Habeas Tr., p. 8).

It is necessary to examine the foundation for Judge Gergen's finding that prior to his pleas of guilty (and, presumably Judge Gergen intended to find, prior to his waiver of counsel), "petitioner understood that the charges were serious and were punishable by prison confinement." No citations to the record appear in the findings. It appears that the following passages are the sole support for the finding that petitioner knew that the charges were punishable by prison confinement. No law enforcement official, nor any witness, testified to having informed him that the charges were punishable by prison confinement, nor does the transcript of the court proceedings in 1956 reveal any such explanation in court. The following passages are all from the petitioner's own testimony at the evidentiary hearing before Judge Gergen on the state court petition for habeas corpus. The petitioner had testified that he was arrested February

10, 1956, and confined to the jail, and that on February 15 the undersheriff came to the jail:

> "And then he told me that if I made a confession to that, that I had that incidents and that, that I wouldn't get much out of it in prison." (State Habeas Tr., p. 15.)

> "And then he told me if I made the confession that I wouldn't get anything, or not much, and if I didn't make a confession that I may never get out of prison." (State Habeas Tr., p. 16.)

The petitioner further testified:

> " * * * that I made a confession and I feel that I am not guilty of what is on the confession and that I didn't know just why I made a confession, but it was because I was told that I had to make a confession and I figured that was my only relief, that I be not given so much sentence or whatever, and then I figured that was the only way out, so I made the confession." (State Habeas Tr., p. 36.)

(The petitioner further testified, and the record confirms, that at the arraignment before the Honorable Harry S. Fox, Circuit Judge, on February 17, 1956, the district attorney read the alleged offenses and the judge

> " * * * asked me how I pleaded, and I didn't know what else to do because Mr. Heilmeier [the undersheriff] had told me if I don't plead guilty that I would—if I plead not guilty, then I would maybe never get out of prison and, if I plead guilty, well, I wouldn't get much." (State Habeas Tr., p. 23.)

This portion of the arraignment proceedings occurred after waiver of counsel and is not directly material to the issue of waiver of counsel. Reference to it is made here only to complete setting out every portion of the record which bears on petitioner's understanding that the charges were punishable by prison confinement.)

The defendant did give a confession to the undersheriff on February 16 (State Habeas Tr., pp. 26, 31–33). The undersheriff testified that he had not told the petitioner that if the petitioner made a confession he wouldn't get much in the way of punishment but that if petitioner did not make a confession he would never get out of prison (State Habeas Tr., p. 69). The undersheriff was not asked whether he had informed petitioner that the offenses were punishable by prison confinement. Judge Gergen has found in the state habeas corpus proceeding that the written confession was made voluntarily and without any coercion, promises or improper inducements of any kind. I do not disturb this finding. However, acceptance of the testimony of the petitioner set forth above is essential to Judge Gergen's finding that he was aware that the offenses were punishable by prison confinement. It is impossible so to prune that testimony as to exclude completely what the petitioner said about the subject matter context in which the undersheriff mentioned prison. Clearly, the undersheriff's statements about prison were not made in the context of whether petitioner should accept or decline the appointment of counsel. They were made, instead, in the context of a possible confession or a possible plea of guilty, or both.

■ This case therefore presents the following situation: At the time of his arraignment, petitioner was a 46-year-old husband, and father of six children, with limited intelligence, an eighth grade education, and no previous experience whatever with criminal law enforcement. It was explained to him by the court and by others out of court, that he was entitled to counsel and that if he was "unable to furnish one" counsel would be furnished for him. He said that he wanted to proceed without an attorney. He had not been told by anyone at any time of the maximum penalties provided for the substantive offenses. He had not been told by anyone at any time of the workings of Wisconsin's sex deviate

law, under which it was possible for him to be confined for the rest of his life if it should be determined, at the required long intervals, that his discharge "would be dangerous to the public." Wis.Stats., Sec. 959.15(13), (14). After five or six days of confinement in jail during which he conferred with no one but law enforcement officials, and on one occasion with his wife and children (State Habeas Tr., pp. 11–29), and during which he was not taken before a magistrate, he had been told by an undersheriff that he might never get out of prison; this statement had not been made in the context of whether petitioner should accept or decline counsel but in an entirely separate context.

Thus the issue here is not whether, prior to the moment at which petitioner told the judge he wanted to proceed without an attorney, he had been apprised that he was entitled to one and that an attorney would be "furnished" to him if he was unable to furnish one. The issue is whether, in "the particular facts and circumstances, surrounding [this] case, including the background, experience, and conduct of the accused" (*Zerbst*, 304 U.S., at 464, 58 S.Ct., at 1023), the petitioner was made sufficiently aware of the consequences of a conviction at the time the court asked him whether he desired an attorney, to justify holding him now to his reply that he wanted to proceed without counsel.

If the issue were an open one, I would be prepared to hold that in the absence of a careful and full explanation of the "continuance of control" feature of Wisconsin's sex deviate law, no defendant vulnerable to its provisions should be held to a statement that he desires to proceed without an attorney. The question is not open. In Butler v. Burke, 360 F.2d 118 (7th Cir. 1966), cert. den. 385

U.S. 835, 87 S.Ct. 79, 17 L.Ed.2d 69 (1966), Cox v. Burke, 361 F.2d 183 (7th Cir. 1966), and Spanbauer v. Burke, 374 F.2d 67 (7th Cir. 1966), the Court of Appeals affirmed the District Court's denial of writs of habeas corpus to petitioners to whom an explanation of the sex deviate law had not been made. In *Butler*, the petitioner had been advised of the maximum penalties for the substantive offenses; in *Cox* and in *Spanbauer*, the petitioners had not been so advised. In none of them, however, was it shown that a petitioner, wholly without prior experience with criminal law enforcement, learned of even the possibility of prison confinement only from statements by an undersheriff in a jail and in a subject matter context entirely separate from whether he should accept or decline the appointment of counsel.

I conclude that under the particular facts and circumstances of this case, including the background, experience, and conduct of the accused, and particularly the circumstances in which the minimal information about the possible consequences of a conviction was imparted to him, the petitioner has shown by a preponderance of the evidence that he was not sufficiently informed of such consequences. He should not be held to his statement to the trial judge that he wanted to proceed without counsel. See Stroetz v. Burke, 268 F.Supp. 912 (E.D. Wis.1967).

The petition for a writ of habeas corpus is granted. The petitioner will be ordered discharged from custody under the present judgment of conviction. Execution of the order will be stayed for a period of thirty days, however, to afford the respondent opportunity to appeal from this ruling.

An order consistent with the foregoing will be entered.