Henry **MOLIGNARO**, Appellant,

v.

Lamont **SMITH**, Warden, Georgia State Prison, Reidsville, Georgia, Appellee.

No. 25784.

United States Court of Appeals
Fifth Circuit.

March 18, 1969.

---

1. Shenandoah Brick & Tile Corp., 168 NLRB No. 7, 66 LRRM 1255 (1968).

W. Lance Smith, Barnard Portman, Savannah, Ga., for appellant.

Mathew Robins, Asst. Atty. Gen., Arthur K. Bolton, Atty. Gen., Marion O. Gordon, Asst. Atty. Gen., Atlanta, Ga., for appellee.

Before WISDOM and AINSWORTH, Circuit Judges, and JOHNSON, District Judge.

WISDOM, Circuit Judge:

This habeas case involves the duty of a trial court to inform an accused of the consequences of pleading guilty to an indictment for child molesting. The question is whether, before accepting a waiver of the right to counsel, the trial court should have informed the accused that a guilty plea carried a maximum possible sentence of twenty years. We reverse the district court's denial of the writ. In the absence of a showing that the petitioner was informed of the possible punishment he faced, we hold that there was no knowing and intelligent waiver of the right to counsel.

Henry A. Molignaro was arrested in Muscogee County, Georgia, on March 2, 1964, and charged with molesting a minor. He alleges that at a preliminary commitment hearing the next day, he requested, but was denied counsel. He pleaded not guilty and was bound over for trial before the Superior Court. At the time of his arrest, Molignaro was a sergeant in the United States Army and had never before been in trouble with the

law. Molignaro had completed six grades of schooling.

For ten days following the commitment hearing, Molignaro remained in jail without benefit of an attorney. On March 13 he came before Superior Court Judge J. Alvin Davis, still without an attorney, and pleaded guilty to the charge of child molestation. The charge carried with it a possible sentence of twenty years imprisonment; Molignaro was sentenced to fifteen. There is no record of the proceedings, a circumstance that makes it difficult for the petitioner to prove non-waiver and difficult for the state to carry its burden of proving a knowing and intelligent waiver.

The prisoner later sought a writ of habeas corpus from the Georgia courts, alleging that his constitutional right to counsel had been violated. He pursued his application to the Supreme Court of Georgia without success. *See* Molignaro v. Balkcom, 1965, 221 Ga. 150, 143 S.E.2d 748.

Molignaro then sought habeas relief in the federal district court. He contended that he had not knowingly waived counsel at the time he pleaded guilty, and that his conviction on the basis of that plea had therefore violated the sixth and fourteenth amendments. At the habeas hearing Molignaro testified that he had decided to plead guilty while in jail before the arraignment hearing. He said that he had pleaded "nolo contendere" in the belief that such a plea would enable him to discover the nature of the charge against him. He denied that anyone at the arraignment had advised him of his right to an attorney, appointed or otherwise.

The state introduced contrary evidence at the hearing. It read into the record a statement by John H. Land, the prosecuting attorney at the time of Molignaro's conviction. Land was asked to state "whether or not Henry A. Molignaro was advised of his constitutional rights concerning the appointment of legal counsel for his defense". Land replied, "Henry A. Molignaro was so advised."

On the basis of that answer, the district court concluded that Molignaro's waiver of counsel had been made with sufficient information to withstand constitutional attack. This Court, however, reversed on that point:

We therefore reverse the judgment of the District Court and remand the cause with directions to hold a new hearing for a full development of the facts with particularity concerning the offer of counsel to Molignaro and his asserted waiver thereof.

Molignaro v. Dutton, 5 Cir. 1967, 373 F.2d 729, 731.

At the remand hearing the State relied solely upon the depositions of two witnesses to prove the validity of the waiver. In the first deposition, John H. Land said that Molignaro appeared to be "lucid" and to "comprehend the explanation of his constitutional rights". He could not testify, however, as to whether Molignaro understood the penalty he might incur if convicted:

Now whether he was told that the punishment for molesting a minor was one to twenty years, I can't definitely say. I can not positively say that. (R. 57).

Judge Davis, who had presided at Molignaro's arraignment, testified, on the basis of the usual practice in his court rather than on his recollection of Molignaro's case, that the prosecutor had informed the accused of the charges against him and of his right to a lawyer's advice, at state expense if necessary. Judge Davis further declared that Molignaro appeared to understand the charge. Like Mr. Land, however, he could not remember that anyone had apprised Molignaro of the twenty-year sentence that may accompany conviction for molesting a minor in Georgia. Nor did he assert that informing defendants as to possible penalties was a part of his court's normal procedure at arraignment. Molignaro himself did not testify at the hearing. There was, therefore, no evidence at the remand hearing that could support a finding that Molignaro knew the magni-

tude of the punishment he was accepting by deciding to waive counsel and plead guilty.

■■ At the close of the evidence, the district judge made his ruling from the bench. After stating that Molignaro bore the burden of proof as to knowing waiver and that the burden had not been carried, the court denied the petition for habeas corpus. This appeal followed. In Miranda v. Arizona, 1966, 384 U.S. 436, 486, 86 S.Ct. 1602, 16 L.Ed.2d 694, a case involving an in-custody interrogation, however, the Supreme Court said:

> If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. [State of] Illinois, 378 U.S. 478, 490, n. 14 [84 S.Ct. 1758, 1764, 12 L.Ed.2d 977]. This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461] (1938).

■ Whether the state produced sufficient evidence at the habeas hearing to support a finding of waiver is, of course, an issue of fact and we must uphold the district court's decision in that respect unless it was clearly erroneous. There was, however, no evidence at all to indicate that either the prosecution or the state trial judge apprised Molignaro, prior to his plea, of the twenty-year maximum sentence that Georgia provides for convicted child molesters. The judge and the solicitor specifically could not testify that Molignaro was aware of the range of punishment which could be imposed. The district court even suggested that

Molignaro may not have been aware of the possible range of punishment:

> THE COURT: The punishment was what you were worried about, the length of your sentence, wasn't that right? Isn't that what is the matter with you now, that they give you more than you thought they would give you?
>
> \*   \*   \*   \*   \*   \*
>
> THE COURT: \* \* \* if you had gotten a year or two years or something, you wouldn't push the case any further would you?

One who was not aware of the statutory penalties for child molesting might well think he would not be sentenced to more than a year or two. When the actual range extends to twenty years, a defendant has done more than make an educated but erroneous guess, and "voluntary" and "intelligent" are no longer apt adjectives to describe his waiver of the right to counsel.

■ We address ourselves to the circumstances of this case. We need not, and do not, rule upon the general question of whether a defendant can *ever* effectively waive counsel without a full warning about the sentence that may accompany conviction. We have before us only Molignaro's waiver of counsel and its constitutional adequacy, as measured by the particular context in which it was made.[1]

■ Molignaro's waiver occurred at a critical stage of the proceedings against him; the guilty plea that he entered without counsel could not be retracted at some later stage, because he was convicted and sentenced immediately afterwards. Thus, under the Supreme Court's decisions in White v. Maryland, 1963, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed. 2d 193, and Hamilton v. Alabama, 1961, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114, his right to a lawyer's advice had become

---

1. "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466.

operative. Once that right attaches, it can be lost only by a fully intelligent waiver. The Supreme Court has been at pains to say that the waiver of counsel must not be treated lightly:

> It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.'

Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. In cases where the defendant manifests the intent to proceed without counsel, the trial court must extend itself to be certain that he knows what he is doing:

> This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.

*Id.* at 465, 58 S.Ct. at 1023, 82 L.Ed. at 1467.

In Carnley v. Cochran, 1962, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70, the Supreme Court emphasized that a federal habeas court must find positive indication of a waiver on the record in order to uphold a finding of waiver below. The burden of proof, moreover, lies with the state:

> Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.

369 U.S. at 516, 82 S.Ct. at 890.[2] *Miranda* involved the burden of establishing admissibility at trial. The validation of the trial court may be thought to justify returning the burden to the petitioner on collateral attack. *Carnley* seems to reject such a distinction:

> Nor is it an answer to say that he may counter such presumptions [that if defendant had no counsel, he waived it] *on collateral attack* by showing—if he can—that he had not in fact agreed, or been willing, to be tried without counsel. To cast such a burden on the accused is wholly at war with the standard of proof of waiver of the right to counsel which we laid down in Johnson v. Zerbst, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461] * * *." (emphasis added),

■■ The thrust of these decisions, and of later decisions on the right to counsel at the pre-arraignment stage,[3] is that defense lawyers are not to be regarded as window dressing in the criminal process. An important element of the "understanding" defendants must possess in order to waive counsel validly is awareness of the possible penalties attaching to the charges they face.

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, *the range of allowable punishments thereunder*, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

Von Moltke v. Gillies, 1947, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309, 321 (emphasis added).

The duty of the trial judge to be certain that the defendant understands the extent of the punishment possible has been reiterated by several courts.[4] The

---

2. See McConnell v. United States, 5 Cir. 1967, 375 F.2d 905.

3. See, e. g., United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694;

Escobedo v. Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

4. The cases are collected in an Annotation: Court's duty to advise or admonish accused as to consequences of plea of guilty, or to determine that he is advised thereof,

Fourth Circuit, referring to federal prosecutions, has stated,

> [a]t a minimum the district court should, before permitting an accused to waive his right to counsel, (1) *explain the charges and the possible punishment*, (2) inquire whether any threats or pressures have been brought to bear on him, and (3) determine whether any promises have been made to him by the investigating or prosecuting officials.

Aiken v. United States, 4 Cir. 1961, 296 F.2d 604, 607. The court went on in *Aiken* to affirm a denial of habeas relief because the defendant "possessed superior intelligence and extensive prior criminal experience" with the law, but advised district judges to adhere to the outlined "minimum" in the future.

Similarly, the Eighth Circuit, in Burch v. United States, 8 Cir. 1966, 359 F.2d 69, stated that a defendant, before declining an attorney's help, "is entitled to know the range of penalty", but concluded that the particular appellant before it "undoubtedly knew" it, since he was on parole for conviction of the same offense.

In Meadows v. Maxwell, 6 Cir. 1967, 371 F.2d 664, the petitioner had pleaded guilty to several sexual offenses without first being informed of the nature of the charges against him, or of the fact that they could lead to life imprisonment. The state trial judge testified at Meadows' habeas hearing that his practice was to offer to appoint counsel for indigent defendants, and the district court held that the petitioner's constitutional rights had been respected. The Sixth Circuit reversed, holding that the record failed to demonstrate an adequate explanation to Meadows of his right to a lawyer's assistance:

> We cannot satisfy ourselves from this statement that the nature of the crimes with which the petitioner was charged was explained to him or that he understood that he could receive a life sentence. 371 F.2d at 668.

In Stroetz v. Burke, E.D.Wis.1967, 268 F.Supp. 912, the defendant had been charged with sodomy. The court did not inform him that the offense was a felony in Wisconsin, or of the range of possible punishments. He pleaded guilty without counsel and subsequently petitioned for federal habeas relief, attacking the constitutionality of his proposed waiver in state court. The district court held in his favor, reasoning as follows:

> In determining the fairness of allowing a purported waiver of counsel to stand, however, it is our opinion that at the very minimum a defendant must understand not only the nature of the charge but the seriousness of the penalties the law prescribes for the violation. In the instant case, petitioner had no way of knowing whether the infraction carried a penalty of imprisonment for one month, or five years,

---

97 A.L.R.2d 549 (1964). See also Note, 55 Col.L.Rev. 366 (1955); Comment, 19 S.C.L.Rev. 261 (1967).

The American Bar Association Project on Minimum Standards for Criminal Justice in the Tentative Draft on Standards Relating to Pleas of Guilty (1967) recommends, Section 1.4, that the Court should not accept a plea of guilty or nolo contendere "without first addressing the defendant personally and * * * informing him:

(i) of the maximum possible sentence on the charge, including that possible from consecutive sentences;

(ii) of the mandatory minimum sentence, if any, on the charge; and

(iii) when the offense charged is one for which a different or additional punishment is authorized by reason of the fact that the defendant has previously been convicted of an offense, that this fact may be established after his plea in the present action if he has been previously convicted, thereby subjecting him to such different or additional punishment."

Cf. Fed.R.Crim.P. 11 requiring the court to interrogate the defendant personally and to determine in all cases that the defendant understands "the nature of the charge and the *consequences* of the plea".

much less that the conviction could lead to confinement for an indeterminate period which could conceivably last the rest of his life.

268 F.Supp. at 917. *Stroetz* was followed by another Wisconsin district court in *Witte v. Burke,* W.D.Wis.1968, 281 F. Supp. 300. That case, like Stroetz' and Molignaro's, involved an untutored defendant who had never before been in trouble with the law, and who was accused of a sex offense. The court noted the previous decisions in its circuit foreclosing the general rule that all waivers made without advice as to maximum penalties are invalid, but held that in the peculiar circumstances of the case, the defendant "should not be held to his statement to the trial judge that he wanted to proceed without counsel". 281 F. Supp. at 305.

It may be argued that the mere underestimate of possible penalties attaching to a crime will not induce innocent men to waive counsel or confess guilt, and that any mistakes in this respect are therefore nonprejudicial. The decisional development of the anti-sporting concept of justice, however, reflects the fear that innocent men pitted against trained prosecutorial forces may waive counsel and plead guilty to crimes they have not committed, if they think that by doing so they will avoid the publicity of trial, secure a break at the sentencing stage, or simply get the whole thing over with. Defendants who know the stiff penalties involved will be less likely to submit in this fashion.

*Cox v. Burke,* 7 Cir. 1966, 361 F.2d 183, only appears to fly in the face of *Von Moltke's* specific admonition that defendant be warned of the range of possible penalties. Cox sought federal habeas corpus relief after being convicted of rape by a Wisconsin court. At arraignment the state judge had asked Cox whether he understood the charge and its serious nature, as well as whether he wanted a lawyer. Cox replied that he did understand the charge and declined the help of counsel. He then pleaded guilty. It was undisputed that the court had failed to warn Cox of the maximum sentence for rape, or of the legal defenses that might be available to him. The Seventh Circuit held that these omissions were insufficient to undermine Cox' waiver of counsel, "[u]nder the particular facts and circumstances" of the case. In so holding, however, the court gave weight to these factors: "Cox was acquainted with criminal process, had previous experience with the consequences of a guilty plea, had prison experience, and had knowledge of the benefits of counsel. He had knowledge that a charge of rape was a serious charge." 361 F.2d at 186.[5]

These mitigating factors, of course, diminish the prejudice that may result from the court's failure to follow the *Von Moltke* requirements. *See* United States v. Smith, 4 Cir. 1964, 337 F.2d 49, 55. None were present in Molignaro's case. The uncontradicted testimony at the habeas hearing disclosed that he had never before undergone criminal prosecution of any sort. His education had stopped after the sixth grade. One who has not advanced beyond that level, much less studied Georgia's criminal statutes, would not, we think, be likely to know

---

5. In accord with Cox v. Burke, *supra,* and distinguishable from the present case on similar grounds is Creighbaum v. Burke, E.D.Wis.1967, 287 F.Supp. 463. Another decision in the same circuit, Butler v. Burke, 7 Cir. 1966, 360 F.2d 118, involved the same problem as Cox. The majority upheld the appellant's waiver of counsel on the ground that "he had been told just previous to his arraignment that the offense was serious and carried a maximum penalty of ten years' imprisonment". 360 F.2d at 122. Judge Kiley dissented because the accused had not been informed that "if convicted he faced the possibilities of detention as a sex deviate until discharged from treatment and of detention beyond the maximum sentence for the alleged offense, with sentence for the offense meanwhile suspended". 360 F.2d at 126.

that the maximum sentence for child molestation in that state is twenty years imprisonment. At the first habeas hearing Molignaro indicated, in respnose to questioning by the court, that he had not expected to be punished as heavily as he later was.

■ We conclude from the foregoing facts that Molignaro's case falls not only within the wording of the *Von Moltke* opinion, but within the purpose of the rule expresed there and in the later cases applying it. A fifteen-year sentence for child molestation is far too serious a penalty to be backed into without a full awareness of what is, or may be, involved. In the circumstances of this case, the forfeiture of rights, without complete understanding of the extremely grave consequences, injures not only the outward appearance of criminal justice but the rationality and reliability of the adversary system. We hold therefore that the judgment of the district court should be reversed.

We think it appropriate to add that our decision does not purport to dispose of all cases in which an accused has waived counsel and pleaded guilty without being informed of the maximum penalty applicable. We rule only upon the specific circumstances of Molignaro's plea: his lack of education, lack of previous criminal record, and the unlikelihood that a layman would be able to anticipate the length of the sentence for the crime of which he was accused. We express no opinion upon the requirements of waiver in less compelling circumstances.

Besides the defect we have thus far discussed, Molignaro maintains that the waiver of counsel was faulty insofar as it resulted from his internment for ten days before arraignment. We need not deal with this contention.

The judgment of the district court is reversed with directions that the prisoner be released unless the State elects to retry him within a reasonable period.