STATE EX REL. BURNETT, Petitioner, v. BURKE, Warden, Respondent.

*January 7—February 4, 1964.*

The petitioner appeared in person and by *Lloyd A. Barbee* and *Thomas M. Jacobsen,* both of Milwaukee.

The respondent appeared by *William A. Platz,* assistant attorney general, and *John Peyton,* district attorney of Racine county.

GORDON, J. On October 16, 1945, Clarence Burnett was convicted of the murder of one Charles DeLuca. DeLuca was slain on October 13, 1945, and the petitioner was apprehended the next day, October 14, 1945, at St. Joseph, Michigan. Burnett waived extradition and was returned to Wisconsin on October 15, 1945, with two codefendants. On October 16, 1945, he was taken before Court Commissioner Eugene L. Haley, where he waived preliminary hearing and was bound over to the circuit court for Racine county for trial. At the trial on that same day, October 16, 1945, he entered his plea of guilty and was sentenced to life imprisonment and was taken to the Wisconsin state prison at Waupun.

Burnett petitioned this court on March 1, 1963, and by order dated March 15, 1963, this court ordered that the record be referred to the circuit court for Racine county to hear and determine the issues of fact presented by the petition and the state's return to such petition.

Pursuant to such order by this court, the circuit court, Judge CLAIR H. Voss, presiding, held a hearing on May 16,

1963, at Racine. Some 182 pages of testimony were taken at the hearing, and a number of exhibits were received. Thereafter, Judge Voss prepared amended findings of fact dated July 16, 1963, which have been filed in this court.

Burnett was convicted on his plea of guilty to the charge of first-degree murder, then a violation of sec. 340.02, Stats. Certain important witnesses are now deceased. These include Herman Koelbel, district attorney at the time of the petitioner's trial in 1945, Robert J. Matheson, sheriff of Racine county at the time of the trial in 1945, and Eugene L. Haley, the court commissioner who presided at the preliminary hearing of the petitioner in 1945. However, the presiding judge at the petitioner's trial, the Honorable ALFRED L. DRURY, was present and gave testimony, as did Louis Hardy, who had served as assistant district attorney of Racine county in 1945.

The petition for the writ of *habeas corpus* contains, among others, the following allegations:

"3. That your petitioner was advised by the Assistant District Attorney of Racine County, one Louis Hardy, that if he were to cooperate with the State by pleading guilty as charged and by relinquishing his right to counsel, he would be released from prison in a few years.

"4. That your petitioner was further advised by the Assistant District Attorney that he should refuse to accept a court appointed defense attorney; that a lawyer couldn't do him any good; that emotions in the local community had risen so high against your petitioner that his safety could not be guaranteed by the authorities; and that therefore the sooner the trial was completed, the better it would be for your petitioner and all concerned.

"5. That your petitioner, upon advice of the Assistant District Attorney, informed the Judge that he did not desire the assistance of a court appointed attorney.

"6. That your petitioner was indigent at the time of the criminal proceedings against him.

"7. That your petitioner was told by the Sheriff of Racine County, one Robert J. Matheson, that a mob was forming around the jail so your petitioner and his co-defendant should agree to a speedy trial in order to be transferred to a safer place of confinement.

"8. That your petitioner's trial for a capital offense lasted less than ten minutes.

"9. That your petitioner's formal education was terminated after he completed the fifth grade at Knoxville, Tennessee, and that at that time he registered a score of 91 on the Haggerty I. Q. Test which was administered to him on April 21, 1931.

"10. That your petitioner's I. Q. rating was 75 when he was tested on November 19, 1945 at the Wisconsin State Prison.

"11. That your petitioner did not possess the education or the intelligence necessary to make a voluntary and rational decision to waive counsel; nonetheless, your petitioner was forced by the Assistant District Attorney to take a course of action under extreme duress whose consequences he was incapable of comprehending or predicting.

"12. That your petitioner was so limited in his knowledge of the law that, without legal counsel, he was unable to understand or appreciate the possible defenses available to him."

The following is a portion of the transcript of the proceedings which occurred on October 16, 1945, in the circuit court for Racine county:

"Mr. Koelbel: If the Court please, I will read the information. Mr. Burnett, will you step up here, please?

"(Whereupon, the defendant stands before the bench while said information is read.)

"Court (to the defendant) : Are you represented by counsel?

"Defendant: No, sir.

"Court: Have you an attorney?

"Defendant: No, I don't want one.

"Court: Then I take it you have no lawyer.

"Defendant: No, sir.

"Court: You are advised that under the constitution, you being charged here with a felony,—murder in the first degree,—that you are entitled to a lawyer if you desire one.

"Defendant: I don't desire one.

"Court: And if you desire, the Court will assign a lawyer to represent your interests.

"Defendant: I don't want one.

"Court: You don't want one?

"Defendant: No.

"Court: You have heard the reading of the information. What is your plea,—guilty or not guilty?

"Defendant: Guilty.

"Court: Upon your plea of guilty, it is the judgment of the court that you are guilty of the offense charged in the information. Have you anything to say why the sentence of the Court should not now be pronounced upon you?

"Defendant: No, sir, I don't have nothing.

"Court: Is there anything you wish to say to the Court?

"Defendant: Just that I am sorry I did it and I am at the mercy of the Court.

"Court: It appears to the Court that you have no regard or respect for human life, property or morality and likewise you have no respect for the uniform worn by the soldiers of this country. You are hereby sentenced to the State Prison at Waupun at hard labor for and during the term of your natural life, the first day to be solitary. Call the next defendant."

The amended findings of fact submitted by Judge Voss either negate the contentions of the petitioner as set forth in his application for a writ or conclude that there is insufficient available proof upon which to base findings. The difficulty confronting Judge Voss in making more precise findings is understandable; over seventeen years had passed since the date of the event and several of the germane witnesses had died.

In paragraph numbered 8 of his findings, Judge Voss asserted the following:

"Upon the record herein, the Court finds that petitioner's allegation that he was told by Robert J. Matheson, Sheriff of Racine County, that a mob was forming around the jail so the petitioner and his co-defendant should agree to a speedy trial in order to be transferred to a safer place of confinement is undisputed under petitioner's testimony. However, there is no evidence corroborating the petitioner's testimony, and it is the opinion of the Court that there is insufficient evidence to make a finding thereon."

While the record does not contain any independent proof that Burnett was put in fear, it does contain some affirmative support for the contention that there was public concern about the possibility of mob violence. Father Labaj and Mr. Foxx testified to this effect. Unless somehow communicated to the accused, the potentiality of mob violence would not be a factor in causing the waiver of counsel to be involuntary.

In *Moore v. Michigan* (1957), 355 U. S. 155, 78 Sup. Ct. 191, 2 L. Ed. (2d) 167, a seventeen-year-old defendant of limited education and poor intelligence, who was charged with first-degree murder in Michigan, was permitted to plead guilty after a brief hearing. There was evidence in the *Moore Case* that the sheriff informed the accused of the mob tension which existed. It was held that Moore's waiver of his right to counsel was not consistent with his constitutional rights.

The record in the instant case supports the petitioner's contention as to his limited formal education and his I.Q. ratings. These circumstances led Judge Voss to conclude in finding numbered 10 that Burnett was of "subnormal intelligence."

The most significant factor in persuading us that the judgment and sentence must be vacated is the transcript quoted above which evidences an inadequate protection of Burnett's right to counsel at the time he was brought before the circuit court in 1945. The transcript itself, without the

benefit of any further fact-finding, reflects the insufficient constitutional protection of the accused's right to counsel. It further leaves us in doubt that Burnett made an intelligent waiver of such right. There is a fleeting attractiveness to the rendition of "swift justice" wherein the alleged felon is brought into court shortly after his apprehension, enters his plea, and within minutes is whisked off to prison. The nub of judicial responsibility requires the trial court to stand between the accused and an impatient or inflamed community.

In *Von Moltke v. Gillies* (1948), 332 U. S. 708, 723, 724, 68 Sup. Ct. 316, 92 L. Ed. 309, the court declared:

"We have said: 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

". . . a mere routine inquiry—the asking of several standard questions followed by the signing of a standard

written waiver of counsel—may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel."

In *State ex rel. Drankovich v. Murphy* (1946), 248 Wis. 433, 438, 22 N. W. (2d) 540, this court recited certain basic rules in connection with the rights of accused, together with appropriate citations for such propositions. These rules (without citations) are repeated hereafter:

" '1. Due process under the Fourteenth amendment requires that a defendant accused of murder be furnished counsel.

" '2. The duty rests upon the trial judge to protect this right.

" '3. The trial judge should do this whether requested or not.

" '4. This duty is imperative where the defendant is illiterate, unacquainted with legal proceedings, isolated and away from friends and without funds.

" '5. There should be a record of the proceedings.

" '6. It should not be presumed that accused knew he had the right to counsel and voluntarily rejected it.

" '7. A plea of guilty is not a waiver of the constitutional right.

" '8. The court should not indulge in speculation as to whether the defendant was prejudiced by not having counsel.' "

Since our decision in *Drankovich, supra,* the United States supreme court has made it clear that there would be no retreat (to say the least) from the standards of protection to be afforded to a person accused of a significant crime. *E.g., Gideon v. Wainwright* (1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. (2d) 799; *Douglas v. California* (1963), 372 U. S. 353, 83 Sup. Ct. 814, 9 L. Ed. (2d) 811; *Machibroda v. United States* (1962), 368 U. S. 487, 82 Sup. Ct. 510, 7 L. Ed. (2d) 473; *Pennsylvania ex rel. Herman v. Claudy*

(1956), 350 U. S. 116, 76 Sup. Ct. 223, 100 L. Ed. 126; *Von Moltke v. Gillies* (1948), 332 U. S. 708, 68 Sup. Ct. 316, 92 L. Ed. 309.

We recognize that before accepting a plea of guilty the trial court must be careful not to require an accused to make admissions or to acknowledge previous crimes. However, by appropriate questions and simply phrased comments, it is feasible for the trial court to do the following:

1. To determine the extent of the defendant's education and general comprehension.

2. To establish the accused's understanding of the nature of the crime with which he is charged and the range of punishments which it carries.

3. To ascertain whether any promises or threats have been made to him in connection with his appearance, his refusal of counsel, and his proposed plea of guilty.

4. To alert the accused to the possibility that a lawyer may discover defenses or mitigating circumstances which would not be apparent to a layman such as the accused.

5. To make sure that the defendant understands that if a pauper, counsel will be provided at no expense to him.

Finally, the trial judge should be certain that the record itself reflects the fact that careful consideration was given to the foregoing propositions.

Under all the circumstances, we are obliged to determine that Burnett did not freely and intelligently waive his right to counsel, and his conviction must therefore be set aside.

*By the Court.*—The petitioner having had a hearing such as he would have had had the writ of *habeas corpus* been issued, it is considered that the issuance of the writ be omitted, and it is adjudged that the judgment and sentence of the circuit court is vacated and that the warden of the state prison deliver the petitioner to the sheriff of Racine county to be held by him for further proceedings according to law.