BILLIE J. GARNICK, PETITIONER, v. FRANCIS E. MILLER, CHIEF PAROLE AND PROBATION OFFICER, DEPARTMENT OF PAROLE AND PROBATION, AND WILLARD WEAVER, ASSISTANT PAROLE AND PROBATION OFFICER, CARSON CITY, NEVADA, RESPONDENTS.

No. 4869

July 7, 1965                    403 P.2d 850

*Marshall A. Bouvier,* and *Stanley H. Brown,* of Reno, for Petitioner.

*Harvey Dickerson,* Attorney General; *C. B. Tapscott,* Deputy Attorney General; *John W. Diehl,* Deputy District Attorney, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

By an original habeas corpus application to this court Billie Garnick seeks her freedom, claiming that she was unconstitutionally denied the assistance of counsel when she entered a plea of guilty to the felony of passing a bad check. This claim and the preliminary question of the availability of habeas corpus to one on probation are the issues we must decide. We hold for the petitioner in each instance, and grant the writ.

Mrs. Garnick waived a preliminary hearing. When arraigned in the district court on June 2, 1964, she was represented by counsel of her choice and pleaded not guilty. Trial was scheduled to commence December 8, 1964. Seven days before trial Mrs. Garnick appeared in court without her attorney, requested permission to withdraw her not guilty plea, which request was granted, and proceeded to enter a plea of guilty. The change of plea had been preceded by an informal conference in the judge's chambers at which the judge, the prosecuting attorney, a service station operator, and Mrs. Garnick, were the participants. Of course, the in-chambers conference was not reported. The record of it is in the form of affidavits later supplied by the participants. Their recollections do not coincide as to some of the statements and representations that were supposed to have been made. We find it unnecessary to relate the factual discrepancies, because of two over-riding circumstances. First, the in-chambers conference was held in the absence of Mrs. Garnick's counsel of

record. Second, at that conference, Mrs. Garnick professed her innocence and this is not denied. Indeed, the affidavit of the judge contains the following statement in referring to the affidavit of Mrs. Garnick: "She states that several times she was not guilty of the charge. It is my recollection that this was only done once." In spite of these circumstances, upon adjournment of the in-chambers conference, court was convened and Mrs. Garnick, without her counsel, was permitted to change her plea to guilty. Sentencing was deferred to December 15, 1964, to allow time for a pre-sentence investigation and report. Her attorney learned of what had transpired and promptly moved to set aside her guilty plea and reinstate the plea of not guilty. This motion was heard by a different judge, and denied. It was his view that Mrs. Garnick had intelligently waived her right to be represented by counsel when she appeared in court to change her plea from not guilty to guilty. Sentence was imposed, execution thereof suspended, and the defendant Garnick was granted probation. This application for habeas relief followed.

(1) We have not before decided whether habeas corpus is available to one on probation. NRS 34.360 reads: "Every person unlawfully committed, detained, confined or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint." By the explicit language of the statute, neither confinement nor imprisonment is a requisite for habeas relief—unlawful restraint is enough. The statute is of sufficient latitude to embrace one on probation, Noble v. Siwicki, (R.I.), 197 A.2d 298; Ex parte Bosso, (Fla.), 41 So.2d 322, and is in harmony with the expression of the United States Supreme Court in Jones v. Cunningham, 371 U.S. 236: "History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." Of course Jones v. Cunningham

was concerned with whether one on parole was "in custody" within the meaning of 28 U.S.C. § 2241. The Court held that a parolee was in custody and that federal habeas relief was available to him. Its reasons are equally applicable to one on probation. See also Annot., 92 A.L.R.2d 682, "Parolee's right to habeas corpus." This court has characterized parole as a "penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of prison walls. It does not set aside or affect the sentence; the convict remains in the legal custody of the state and under the control of its agents, subject at any time, for breach of condition, to be returned to the penal institution." Pinana v. State, 76 Nev. 274, 352 P.2d 824. Most of that language also has application to a probationer. One on probation remains in the legal custody of the state and under the control of its agents. To that extent, such a person is restrained of his liberty. Indeed, in this state probationers and parolees are supervised by the same staff. NRS 213.1095–213.1097. We hold that the writ of habeas corpus may be utilized to test the legality of the restraint of one on probation.

(2) Gideon v. Wainwright, 372 U.S. 335, held that the Fourteenth Amendment to the Federal Constitution makes the Sixth Amendment guarantee of right to counsel obligatory upon the states. This right extends to any critical stage of the proceeding. Significant differences in the criminal procedures of the respective states may cast doubt upon the right to counsel before an accused is arraigned in the court where he is to stand trial. This was made clear by the United States Supreme Court in Pointer v. Texas, 380 U.S. 400. See also our opinions in Victoria v. Young, 80 Nev. 279, 392 P.2d 509; and Ex parte Hoff, 80 Nev. 360, 393 P.2d 619. However, there is no doubt but that a defendant's arraignment in the trial court is a critical stage of the proceeding. Hamilton v. Alabama, 368 U.S. 52. The right to counsel at that point must be zealously guarded.

Here, Mrs. Garnick was represented by counsel and denied guilt. The court and prosecutor each knew that she had an attorney. The in-chambers conference and the subsequent court proceedings should not have occurred in his absence. We do not question the motives or integrity of the judge or the prosecutor, but heartily condemn their impropriety. It is suggested that the defendant's rights were fully protected throughout; that she requested the informal conference; and that she waived her constitutional right to counsel. The suggestion is without support in this record. The standards for testing the matter of waiver are explicitly stated in Von Moltke v. Gillies, 332 U.S. 708, 723–724: "We have said: 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."

The colloquy between the court and Mrs. Garnick is

set out in the footnote.[1] An intelligent waiver of her right to counsel did not occur. The mechanical, routine questions of the court, the defendant's responses—the total failure of the court to discharge its duty as delineated by the Von Moltke decision—compel the conclusion that the defendant's constitutional right to counsel was ignored.

It is suggested that the sparse court record quoted in the footnote may be supplemented by the affidavits which were given by the participants in the preceding informal conference, to aid us in deciding the question of waiver. We reject this suggestion. A waiver must appear from the court record. State ex rel. Burnett v. Burke, 22 Wis.2d 486, 126 N.W.2d 91; Commonwealth ex rel. O'Lock v. Rundle, 415 Pa. 515, 204 A.2d 439.

The judgment of conviction is set aside, and the requested Writ of Habeas Corpus is granted.

BADT, J., concurs.

[1] "COURT: What did you want to present to the Court at this time?

"MRS. GARNICK: I have come to change my plea and I have been unable to reach my counselor by phone or by mail so I have come unrepresented.

"COURT: You have made attempts to get in touch with Mr. Bouvier?

"MRS. GARNICK: Yes, I have, both by phone and by letter.

"COURT: And you want to change your plea?

"MRS. GARNICK: Yes, sir.

"COURT: And you understand that in changing your plea you may be subjecting yourself to a term of imprisonment on this charge?

"MRS. GARNICK: Yes, sir.

"COURT: You are fully prepared to take this step without the presence of your attorney?

"MRS. GARNICK: Yes, sir.

"COURT: Do you have any objection to the defendant changing her plea, Mr. Davis?

"MR. DAVIS: No objection, Your Honor.

"COURT: Very well, then. Permission is granted for a change of plea. How do you plead to the offense charged in the Indictment?

"MRS. GARNICK: I plead guilty.

"COURT: The record will show the defendant pleads she is guilty of the offense charged in the Indictment, namely, making a check with insufficient money or credit in the drawee bank with which to pay the same, constituting a felony. You may be seated."

ZENOFF, D. J., concurring:

The record of this case compels me to concur reluctantly with the majority but only for the bare fact that the defendant did state in one instance at the conference that she was innocent of the charges. In all other respects Judge Gregory followed long established custom in disposing of the criminal matter without trial at the request of the defendant.

True it is that it was without the presence of her attorney. But she represented repeatedly to the assembled group, which included the district attorney and her family friend (who with the defendant's husband initiated the conference), that she hadn't seen or heard from her attorney for many months, and this representation was made when the judge at the outset sought to telephone the defendant's counsel. Relying upon this, the judge clearly outlined the proceedings and indicated that (paraphrasing) she would very likely be granted probation. That the judge and defendant were friends of long standing is apparent. Her main concern was publicity that might jeopardize her job availability, but nowhere does it appear that anyone present at the conference represented that there would be no publicity attending her guilty plea. It was only *after* the plea of guilty, and radio publicity followed, that she regretted her action. She then sought her lawyer who moved to set aside the guilty plea.

Defendant's affidavit supporting the motion was replete with self help and liberality with the truth. As one example, she asserted that she had not stated she was unable to reach her attorney, in fact, had seen him daily for a year. If true, she must have kept him pretty busy. She further stated in the conference in chambers that she had constantly denied her guilt, this in direct contradiction to the statements of all of the others present who agreed that she did so state but only one time.

It is clear that no one compelled her to meet with the judge in chambers, she never denied the very active instigation of her husband which created the conference, she met the family friend and district attorney for

coffee and then likewise freely and voluntarily walked with them from a restaurant to the judge's chambers, and just as clearly could have left at any time had she so desired. What took place in the courtroom merely was the procedure pre-arranged more fully in the court's chambers.

From the opposing affidavits, it can truly be concluded that no false inducements were made, nor undue influence exercised, to compel her change of plea from not guilty to guilty. However, it being conceded that she denied her guilt once, once was enough.

My concern is for the future, that trial judges will refuse to consider change of pleas in chambers because of a natural apprehension of later accusations that negligent or false conduct misled the person accused and caused him to change his plea, or that he did not get what he was promised, or that he was threatened or coerced in the judge's chambers, and ad infinitum. The only safe course would be a formal proceeding in open court, hardly conducive to a pre-trial conference.

The trial courts of Nevada are already overburdened with criminal matters that by reason of a statutory priority, are depriving civil litigants of their day in court. If the trial court cannot safely accept change of plea opportunities the number of costly time consuming criminal trials will be multiplied immeasurably.

My concern is directed at the crass audacity of the defendant who took advantage of a situation created by her own conduct and that of her husband, and now points an accusing finger at the judge who gave her the probation which she obviously sought and bargained for.