ALAN DARRELL FRANKLIN, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 13130

June 15, 1982

646 P.2d 543

*Morgan D. Harris,* Public Defender, and *Terrence M. Jackson,* Deputy Public Defender, Clark County, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, *James Tufteland* and *James W. Erbeck,* Deputy District Attorneys, Clark County, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

A jury convicted the appellant, Alan Darrell Franklin, of burglary, robbery with use of a deadly weapon and two counts of attempted sexual assault with use of a deadly weapon. Franklin seeks reversal on several grounds. We address two of appellant's assignments of error: (1) the trial court's rejection of appellant's requested instruction regarding a defendant's failure to testify, and (2) the admission of evidence indicating appellant's refusal to answer a question by a police officer. We determine that although the trial court erred in both instances,

the errors were harmless beyond a reasonable doubt and do not warrant reversal of the conviction.

According to the testimony of prosecution witnesses, in the early morning hours of February 6, 1980, two women, Cathy and Vivian, were opening a Las Vegas store for business. Franklin entered the store and threatened both women with a butcher knife, ordering them into an office. Franklin forced one of the women, Vivian, to open the store's cash register, from which he took bills and a roll of quarters. Appellant took Vivian into a storeroom and, according to Vivian, forcefully removed her blouse, pulled down her slacks and underwear and penetrated her vagina with his finger. Vivian also testified that Franklin at least partially penetrated her with his penis.

The other woman, Cathy, called the police, who arrived while Franklin was still in the storeroom. According to the first officer at the scene, Vivian emerged from the storeroom upset and only partially clothed. The police recovered currency and a roll of quarters from Franklin's pockets.

Franklin was advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). One officer testified that Franklin said, "I'm so stupid, I don't know why I tried it." Later that morning, after again receiving a *Miranda* warning, Franklin was interviewed by a Henderson Police Department detective, to whom Franklin admitted that he had had a knife, forced the women to give him the money, told Vivian to take off her clothes, and touched her. When asked what he did to her, he replied, "Well, I'd rather not say at this time." The detective ceased this particular inquiry, but continued the interview.

1. *The Cautionary Jury Instruction.*

The major issue on appeal is whether the trial court committed reversible error by refusing the following jury instruction requested by appellant:

> It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. You must not draw any inference from the fact that he does not testify. Further, you must neither discuss this matter nor permit it to enter into your deliberations in any way.[1]

---

[1] Appellant's counsel expressly declined a related instruction, which, if requested, must be given pursuant to NRS 175.181. The statutory instruction provides:

> [I]n accordance with a right guaranteed by the constitution, no person can be compelled in a criminal action to be a witness against himself.

The recent Supreme Court decision of Carter v. Kentucky, 450 U.S. 288 (1981), requires courts to honor requests for such cautionary instructions, in order to comport with a defendant's Fifth Amendment privilege against self-incrimination. Respondent concedes that the trial court's refusal of the requested instruction constitutes error under *Carter*. The state claims, however, that the *Carter* decision should not be applied retroactively to this case. The *Carter* decision is silent as to its retroactive application.

We are concerned here only with partial retroactivity; Franklin's judgment of conviction was not final at the time the *Carter* rule was announced in March 1981. Although the practice is not universal, the Supreme Court has noted that generally, a new rule is applicable to cases pending on direct review when the rule is announced. Linkletter v. Walker, 381 U.S. 618, 627 (1965). *But see,* Stovall v. Denno, 388 U.S. 293 (1967).[2]

In Tehan v. United States, 382 U.S. 406 (1966), the Court was required to determine the retroactivity of the rule established in Griffin v. California, 380 U.S. 609 (1965): adverse comment by a prosecutor or judge upon a defendant's failure to testify violates the Fifth Amendment privilege against self-incrimination. The *Tehan* Court determined that on balance, retroactivity of the *Griffin* rule to cases in which the judgment was final on the date of *Griffin's* issuance was not warranted. The Court noted, however, that the question in *Tehan* was not "pure prospectivity" of *Griffin*, *"[n]or [was] there any question of the applicability of the Griffin rule to cases still pending on direct review at the time it was announced." Id.* at 409, n. 3 (emphasis added).

In *Griffin,* the Court anticipated and reserved the related constitutional question raised by *Carter*. Griffin, *supra* at 615, n. 6. The *Carter* decision makes clear that both the *Griffin* and *Carter* rulings serve the same purpose and support the same proposition—that a defendant cannot be penalized for the

---

[2]In cases determining complete retroactivity or prospectivity of new constitutional rules, the Supreme Court has consistently considered three factors: (1) the purpose of the rule; (2) the reliance on prior, contrary law; and (3) the effect retroactive application would have on the administration of justice. *See* Tehan v. United States, 382 U.S. 406 (1966). We have adopted the same analysis to determine the retroactivity of new Supreme Court rulings in which retroactive effect has been left undecided. *See* Hatley v. State, 97 Nev. 360, 630 P.2d 1225 (1981).

exercise of his constitutional right not to testify. Carter, *supra* at 301. We are satisfied that the *Carter* decision warrants that same retroactive effect given the analogous *Griffin* rule; *Carter* is applicable to cases pending on direct review when the Supreme Court announced its decision.[3] Therefore, the trial court committed error by refusing defendant's requested instruction.

However, we reject appellant's contention that *Carter* requires automatic reversal for such error. The *Carter* Court expressly declined to address the question of automatic reversal because the state had failed to raise the harmless error argument below. *Id.* at 304. The Court noted only that it was "arguable" that refusal to give such a requested instruction could never be harmless. *Id.* (citing Bruno v. United States, 308 U.S. 287 (1939)).

In Chapman v. California, 386 U.S. 18 (1967), the Court determined that the violation of the *Griffin* rule would be governed by the harmless error standard.

The *Chapman* Court concluded that protecting the defendant's Fifth Amendment privilege is a consideration of a different order from those concerns underlying other constitutional decisions which have mandated automatic reversal. *See* Gideon v. Wainwright, 372 U.S. 335 (1963), (indigent's right to counsel); Payne v. Arkansas, 356 U.S. 560 (1958), (coerced confessions). In these instances, there is a "clear danger of convicting the innocent. . . . By contrast, the Fifth Amendment's privilege against self-incrimination is not an adjunct to the ascertainment of truth." Tehan, *supra* at 416. We have already noted the analogous relationship between the *Griffin* and *Carter* holdings; we see no justification for applying a different standard of review to the rule announced in *Carter*. We join several other jurisdictions[4] which have determined that *Carter* did not abrogate the *Chapman* test: the error is not reversible if the court determines that it was harmless beyond a reasonable doubt.

---

[3]Several other jurisdictions have, without comment, applied *Carter* to cases pending on direct review at the time *Carter* was announced. *See, e.g.,* People v. Silver, 175 Cal.Rptr. 483 (Cal.App. 1981); People v. Crawford, 632 P.2d 626 (Colo.App. 1981).

[4]See People v. Silver, *supra;* Parker v. State, 425 N.E.2d 628 (Ind. 1981); Richardson v. State, 402 So.2d 848 (Miss. 1981), for examples of jurisdictions which have adopted the harmless error standard for the *Carter* rule. However, in People v. Crawford, *supra;* Mosley v. State, 402 So.2d 559 (Fla.App. 1981) and Brown v. State, 617 S.W.2d 234 (Tex.Cr.App. 1981), the courts determined that *Carter* required automatic reversal for a trial court's refusal to give the requested instruction.

In the instant case, based on the victims' testimony, police accounts, the appellant's own admissions and the physical evidence presented at trial, we find that competent evidence of appellant's guilt was overwhelming. Failure to give the requested cautionary instruction likely had minimal, if any, impact on the jury's decision, and we conclude the error was harmless beyond a reasonable doubt.

2. *Testimony Regarding Appellant's Refusal to Respond to Police Interrogation.*

Appellant was twice given his *Miranda* warnings, once just after police arrived at the scene and again at the police station. On both occasions, he indicated his willingness to discuss the incident without an attorney. Appellant contends that the trial court committed reversible error by admitting defendant's statement indicating his desire not to answer questions about what he did to Vivian after he forced her to disrobe and touched her.

We agree that the trial court erred by denying Franklin's motion *in limine* to exclude the statement. It is constitutionally impermissible to admit evidence of a defendant's invocation of his Fifth Amendment privilege to remain silent. Michigan v. Mosley, 423 U.S. 96 (1975); Miranda, *supra* at 468, n. 37. *See also,* Bernier v. State, 96 Nev. 670, 614 P.2d 1079 (1980); Vipperman v. State, 92 Nev. 213, 547 P.2d 682 (1976).

We believe, however, that this issue is also governed by the harmless error standard. *See, e.g.,* Shepp v. State, 87 Nev. 179, 484 P.2d 563 (1976); Bernier and Vipperman, *supra.* Several factors support a finding that the error was harmless beyond a reasonable doubt. The prosecution did not emphasize the silence or use it to overtly foment an adverse inference of guilt in the minds of the jury. *See* Shepp, *supra.* Appellant's refusal to answer came in the midst of an "unbroken chain" of voluntary statements. *See* State v. Walker, 235 N.W.2d 810 (Minn. 1975), *cert. denied,* 426 U.S. 950 (1976). Finally, as we have already determined, other evidence of appellant's guilt was overwhelming; the reference to his silence on one question likely had little impact on the jury. The jury found appellant guilty of attempted sexual assault, not sexual assault. That finding could reasonably be based on Franklin's statements to the detective *prior* to his refusal to answer the one specific question. The jury apparently did not infer from Franklin's silence any more wrongdoing than that to which he voluntarily admitted.

We conclude that the error in admitting evidence of appellant's silence was harmless beyond a reasonable doubt.

We decline to address appellant's remaining assignments of error, which we find to be without merit.

GUNDERSON, C. J., and SPRINGER and MOWBRAY, JJ., and ZENOFF, SR. J.,[5] concur.