JAMES TILLEMA, Appellant, v. THE STATE
OF NEVADA, Respondent.

No. 25354

April 3, 1996                                          914 P.2d 605

*Morgan D. Harris,* Public Defender and *Robert L. Miller,*
Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart
L. Bell,* District Attorney and *James Tufteland,* Chief Deputy
District Attorney, Clark County, for Respondent.

**OPINION**

By the Court, SHEARING, J.:

Appellant James Tillema was arrested for a burglary of a vehicle on May 29, 1993, and was arrested again for another burglary of a vehicle and for a burglary of a store on June 16, 1993. As a result, he was charged with a total of three counts of burglary pursuant to NRS 205.060 as well as two counts of possession of burglary tools pursuant to NRS 205.080. Tillema's

case proceeded to trial, and he represented himself. The jury convicted Tillema on all counts. The district court sentenced Tillema under the habitual criminal statute, NRS 207.010, to three consecutive life sentences with the possibility of parole and to two concurrent one-year terms.

On appeal, Tillema asserts that the district court erred in denying his motion to sever the counts, admitting evidence of a prior crime, not striking evidence of his exercise of his right to remain silent, and finding him to be a habitual criminal. He further asserts that the prosecutor improperly commented on the prior crime in closing argument and that insufficient evidence supports his convictions. We conclude that all of these contentions lack merit and affirm the convictions and sentences.

Tillema first claims that the vehicle burglary counts were improperly joined with each other and with the store burglary count. He admits that the two vehicle burglaries were similar in that they both involved vehicle break-ins, but contends that the State did not establish any common scheme or plan to connect the two incidents to each other or to the store incident in order to make joinder proper.

NRS 173.115 provides that two or more offenses may be joined together in a separate count for each offense if the offenses charged are "[b]ased on the same act or transaction," "connected together" or constitute a "common scheme or plan." In Mitchell v. State, 105 Nev. 735, 738, 782 P.2d 1340, 1342 (1989), we held that "if . . . evidence of one charge would be cross-admissible in evidence at a separate trial on another charge, then both charges may be tried together and need not be severed." "It is the established rule in Nevada that joinder decisions are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion." Robins v. State, 106 Nev. 611, 619, 798 P.2d 558, 563 (1990), cert. denied, 499 U.S. 970 (1991).

We conclude that the district court did not abuse its discretion in allowing the two vehicle burglary counts and store burglary count to be joined together. The district court certainly could determine that the two vehicle burglaries evidenced a common scheme or plan. Both offenses involved vehicles in casino parking garages and occurred only seventeen days apart. Moreover, we conclude that evidence of the May 29th offense would certainly be cross-admissible in evidence at a separate trial on the June 16th offense to prove Tillema's felonious intent in entering the vehicle. See NRS 48.045(2); Mitchell, 105 Nev. at 738, 782 P.2d at 1342.

Likewise, the store burglary could clearly be viewed by the district court as "connected together" with the second vehicle burglary because it was part of a "continuing course of conduct." NRS 173.115(2); Rogers v. State, 101 Nev. 457, 465-66, 705 P.2d 664, 670 (1985), *cert. denied,* 476 U.S. 1130 (1986). On June 16th, a detective viewed Tillema's burglary of a van in a casino parking garage and then observed Tillema immediately leaving the garage and walking south to a Woolworth's store. Following on foot, the detective saw Tillema in the hardware section of the store, where Tillema remained for approximately five minutes. The detective did not see Tillema take anything or leave the store and did not know if he attempted to pay for any merchandise. The detective then saw Tillema go to a gas station a short distance away. Tillema sold a packaged lock, with "Woolworth's" and "a price of four ninety-nine" on it, to a gas station attendant for two dollars.[1] We believe that Tillema's acts on June 16th demonstrate that he had an intent to steal something, anything, that he could subsequently sell. Thus, the vehicle burglary and the store burglary were certainly "connected together" due to Tillema's felonious intent and "continuing course of conduct." Moreover, we conclude that most of the evidence of the June 16th vehicle burglary would be cross-admissible in evidence at a separate trial on the store burglary to prove Tillema's felonious intent in entering the store. *See* NRS 48.045(2); *Mitchell,* 105 Nev. at 738, 782 P.2d at 1342; *cf. Robins,* 106 Nev. at 619, 798 P.2d at 563. Accordingly, we conclude that the vehicle burglary counts were properly joined with each other and with the store burglary count.

Tillema next claims that evidence of his conviction for a 1991 vehicle burglary was improperly admitted and prejudiced his case. We conclude that the evidence was admissible to show Tillema's common plan or scheme and his intention to feloniously enter the vehicles on May 29th and June 16th. *See* NRS 48.045(2). Significantly, this common plan is evidenced by the fact that the 1991 vehicle burglary and the two vehicle burglaries in the instant case all occurred in casino parking garages. We further conclude that the district court did not abuse its discretion in determining that the probative value of this evidence outweighed its prejudicial effect. The decision to admit or exclude

---

[1]After arresting Tillema, officers returned with Tillema to the Woolworth's store and contacted the manager and each of the cashiers. None acknowledged having recently sold him the lock. None could identify him as having been in the store that day, and none had seen him shoplifting. (No Woolworth's employees testified, and this testimony from the detective was received without objection.)

evidence, after balancing the prejudicial effect against the probative value, is within the discretion of the trial judge. Petrocelli v. State, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985).

The district court instructed the jury that it could consider Tillema's prior conviction for vehicle burglary only as evidence of Tillema's intent, motive, and plan, and not as evidence of bad character. Tillema contends, however, that the prosecutor went beyond the limiting instruction in closing argument and improperly urged the jury to convict Tillema based on the fact that he had engaged in other wrongdoing in his life. After review of the prosecutor's comments, we conclude that the prosecutor did not make improper character arguments but rather pointed out that the prior conviction was evidence of Tillema's common scheme or plan and felonious intent to enter the vehicles.[2]

Tillema further claims that the district court erred in failing to declare a mistrial for, or at least strike the testimony and admonish the jury to disregard, a police witness's reference to Tillema's refusal to reply to interrogation following arrest and receipt of *Miranda* warnings. Miranda v. Arizona, 384 U.S. 436 (1966). After Tillema was arrested on May 29th and during a search of his person, a standard screwdriver with yellow paint on the blade was located in Tillema's right front pants pocket. Officer Thomas Wagner testified that Tillema was asked what the screwdriver was used for and that Tillema refused to reply. Wagner casually made this comment regarding Tillema's silence during a narrative and the prosecutor never emphasized it.

---

[2]The prosecutor argued as follows:

> You know, what a difference it makes between a person who, as far as you know, has no history of doing this kind of thing and is found in possession of property or seen to go into a vehicle. There's all kind of explanations for that. And you might be inclined to give him a benefit of a doubt. You might say, well, maybe they were going in for an altruistic motive.
>
> When you know it's a person who does this as a regular basis, then that eliminates that doubt. It eliminates reasonable doubt. It eliminates giving the defendant any benefit of a doubt.
>
> And all of the series of events that occurred in this case as well as the ones back in 1991 can be considered by you on this count as well. It makes it conclusive that the defendant, Mr. Tillema, as Detective Flaherty, the eyewitness said, did go into the vehicle. He didn't have permission.
>
> Entry into the vehicle without permission is something from which you may infer an intent to commit a larceny inside. But more than that, you can infer that—from his conduct and his whole history, that this is the kind of thing that he does.

"It is constitutionally impermissible to admit evidence of a defendant's invocation of his Fifth Amendment privilege to remain silent. We believe, however, that this issue is also governed by the harmless error standard." Franklin v. State, 98 Nev. 266, 271, 646 P.2d 543, 546 (1982) (citations omitted). We conclude that the admission of the witness's statement was harmless error beyond a reasonable doubt. "The prosecution did not emphasize the silence or use it to overtly foment an adverse inference of guilt in the minds of the jury." *Id.*

Tillema also asserts that habitual criminal treatment pursuant to NRS 207.010 under the facts of his case is an abuse of discretion because his prior crimes were nonviolent and some were remote in time. He cites Sessions v. State, 106 Nev. 186, 789 P.2d 1242 (1990), to argue that three consecutive life sentences for entering into two unoccupied vehicles and stealing a lock constitute far too harsh a penalty. We disagree. Besides the judgments used to satisfy the habitual criminal requirements, the district court considered Tillema's presentence report, detailing a career of criminal activity, including sixty-five arrests, nine felony convictions, and eighteen misdemeanor convictions. We note that "NRS 207.010 makes no special allowance for non-violent crimes or for the remoteness of convictions; instead, these are considerations within the discretion of the district court." Arajakis v. State, 108 Nev. 976, 983, 843 P.2d 800, 805 (1992). The record demonstrates that the district court did not abuse its discretion in adjudicating Tillema a habitual criminal.

Finally, Tillema claims that the evidence against him was insufficient to convict him of burglary and possession of burglary tools. Based on our review of the evidence, we conclude that the "jury, acting reasonably, could have been convinced of the defendant's guilt beyond a reasonable doubt" as to all counts. Kazalyn v. State, 108 Nev. 67, 71, 825 P.2d 578, 581 (1992).

The dissenting justices would have this court *sua sponte* raise the issue of the adequacy of Tillema's canvass and conclude that Tillema did not intelligently and knowingly waive his right to counsel. We believe that Tillema's convictions should not be reversed on the ground that he did not knowingly and intelligently waive his right to counsel. In this case, the record affirmatively shows that the requirements of Faretta v. California, 422 U.S. 806 (1975), were met. *Cf.* Graves v. State, 112 Nev. 118, 912 P.2d 234 (1996). The record further demonstrates that Tillema understood the disadvantages of self-representation, including the

risks and complexities of his case as required by *Arajakis,* 108 Nev. at 980, 843 P.2d at 802-03. It is particularly inappropriate to reverse Tillema's convictions when he fails to allege error in being allowed to represent himself.

We disagree with the dissenting justices' conclusion that the record in Tillema's case demonstrates that he did not appreciate the dangers and disadvantages of self-representation when he chose to represent himself. The judge corrected each of Tillema's misunderstandings. Despite the fact that the judge pointed out to Tillema that he misunderstood a number of issues, Tillema insisted on representing himself.

For the foregoing reasons, we affirm Tillema's judgments of conviction and sentences.

STEFFEN, C. J., and YOUNG, J., concur.

ROSE, J., with whom SPRINGER, J., joins, dissenting:

I dissent. The district court failed to adequately canvass Tillema to establish that he intelligently and knowingly waived his right to counsel. The canvass was cursory and consisted only of the district court advising Tillema that self-representation was a bad idea and what the role of standby counsel would be should he elect to represent himself. The inquiry included nothing of the crimes charged, the possible defenses, or Tillema's background. Based solely on this issue, we should reverse and remand this case.

A criminal defendant has the right to self-representation under the Sixth Amendment of the United States Constitution. Faretta v. California, 422 U.S. 806, 818-19 (1975). However, an accused who chooses self-representation must knowingly and intelligently waive the right to counsel. *Id.* at 835. Such a choice can be competent and intelligent even though the accused lacks the skill and experience of a lawyer, but the record should establish that the accused was made aware of the dangers and disadvantages of self-representation. *Id.*

The trial court must canvass a defendant to determine whether his or her waiver of the right to counsel is valid. Cohen v. State, 97 Nev. 166, 168, 625 P.2d 1170, 1171 (1981).

> "To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."

*Id.* (quoting Garnick v. Miller, 81 Nev. 372, 376, 403 P.2d 850, 853 (1965)).

The test of the validity of a waiver is not whether the court explained the elements of the charged offense or possible defenses to the defendant or provided other specific warnings or advisements, "'but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case.'" Arajakis v. State, 108 Nev. 976, 980, 843 P.2d 800, 802-03 (1992) (quoting People v. Bloom, 774 P.2d 698, 716 (Cal. 1989), *cert. denied,* 449 U.S. 1039 (1990)). Determining the validity of a waiver of the right to counsel requires "a fact-specific inquiry focused on the background, experience and conduct of the accused." Haberstroh v. State, 109 Nev. 22, 25, 846 P.2d 289, 292, *cert. denied,* 510 U.S. 858, 114 S. Ct. 169 (1993).

While this court has indicated that we will review a *Faretta* canvass as a whole and it is not necessary that the accused establish that he is competent to represent himself, these cases establish that coverage of certain matters should be part of a *Faretta* canvass. These matters are: (1) the nature of the charges, (2) the sentences for each charge and the total possible sentence the defendant could receive, (3) the possible defenses and mitigating facts the defendant might be able to assert, (4) the background and education of the accused, (5) the defendant's experience with and understanding of the legal system, and (6) the defendant's understanding of the right to legal representation that he is surrendering and the disadvantages of self-representation.

Tillema did not raise on appeal the validity of his waiver of counsel, but this court may address plain error and constitutional error sua sponte. Sterling v. State, 108 Nev. 391, 394, 834 P.2d 400, 402 (1992). A review of the record in this case shows that the canvass conducted by the district court was inadequate. The district court gave Tillema some sound advice, helpful explanation, and relevant warnings. The court explained the role of standby counsel, advised Tillema of the inherent disadvantage in vouching for his own credibility if he testified, and warned him that an attorney could better handle matters such as a motion by the State to introduce his prior convictions into evidence. However, the transcript of the canvass shows that Tillema's waiver of his right to counsel was not knowing and intelligent.

The district court did not discuss the nature of the charges against Tillema even after it discovered that Tillema did not understand that he no longer faced the charge of failing to register as an ex-felon, nor did the court discuss the possible defenses or mitigating facts—a subject that was highly relevant when Tillema several times asserted that the prosecution had a very weak case.

Regarding Tillema's knowledge of the range of allowable punishments, the trial court informed Tillema that he faced the possibility of a life sentence if he were declared a habitual criminal. However, Tillema was not told he faced the possibility of three consecutive life terms, which he in fact received at his sentencing, and there is no indication in the record that he knew of this possibility when he chose to represent himself.

The district court did inquire into Tillema's legal knowledge and experience with the legal system. However, this inquiry only showed that Tillema was laboring under many legal misconceptions. Tillema did not understand that he could not testify while cross-examining the State's witnesses. When the court attempted to clear up this misconception and warned Tillema that he would not be allowed to make statements during cross-examination, Tillema responded by reiterating that the case against him was weak and that he was innocent. This was Tillema's response at several points to the court's canvassing.

Tillema's responses to the district court did not demonstrate that he understood the dangers and disadvantages of self-representation or apprehended the facts essential to a broad understanding of the whole matter. On the contrary, they showed that Tillema confused his right to testify and the process of cross-examination, was unaware that he no longer faced one charge, and felt that his professed innocence was relevant to the decision to represent himself. When the court asked Tillema if he understood that the State would introduce and challenge the credibility of his preliminary hearing testimony, Tillema answered that he understood that it had been his right to testify at the preliminary hearing. Although the court then asked Tillema again if he understood that the State would use what he had said at the hearing against him and Tillema said he understood that, responses such as these did not indicate that his decision was a knowing and intelligent one.

The trial court did not inquire into Tillema's background and education, other than his legal experience. It did not discover that Tillema had never graduated from high school or attained a GED. His relatively low-level of education was relevant to this proceeding.

The canvass included nothing of the charges against Tillema, possible defenses or mitigating factors, or his background or experience. It did not establish that Tillema had any apprehension of the facts essential to a broad understanding of his case and the decision to forgo assistance of counsel. Rather, the record demonstrates that he did not appreciate the dangers and disadvantages of self-representation when he chose to represent himself. On the possible maximum sentence, Tillema was actually misinformed.

The court informed Tillema that he could receive a life sentence for being a habitual criminal. It did not inform him that his three felony convictions could each be converted to a life sentence under the habitual criminal statute and run consecutively. This exposed Tillema to three consecutive life sentences, each requiring a minimum of ten actual years (no good time credits) in prison, a sentence Tillema actually received.

There is no doubt that Tillema was prejudiced at trial by his lack of competent counsel. For example, he failed to object to inadmissible hearsay evidence in regard to the charge of burglary of a department store. Even with this hearsay, the evidence of this shoplifting burglary was insufficient. Nevertheless, the jury convicted Tillema of this crime, and the majority now affirms it.

The jury found Tillema guilty of three counts of burglary and two counts of possession of burglary tools. The district court adjudicated Tillema a habitual criminal and sentenced him to three consecutive terms of life imprisonment with the possibility of parole on the burglary counts. The district court's canvass failed to establish that Tillema understood the fact that this harsh a punishment was even possible or other facts essential to an understanding of the disadvantages of self-representation and the risks and complexities of his case. The record shows that Tillema did not knowingly and intelligently waive his right to counsel.