STATE of Missouri, Respondent,

v.

Walter Timothy STOREY, Appellant.

No. 80200.

Supreme Court of Missouri,
En Banc.

Feb. 23, 1999.
Rehearing Denied March 23, 1999.

David Hemingway, Asst. Sp. Public Defender, S. Paige Canfield, Asst. Public Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for Respondent.

DUANE BENTON, Chief Justice.

Appellant Walter Timothy Storey murdered Jill Frey on February 2, 1990. At his 1991 trial, he was convicted of first degree murder, armed criminal action, second degree burglary, and tampering with evidence. In 1995, this Court affirmed all convictions and sentences except the death sentence, which was reversed and remanded because defense counsel was ineffective for not objecting to improper penalty-phase argument by the State. *State v. Storey*, 901 S.W.2d 886 (Mo. banc 1995). At a second penalty phase in 1997, the jury recommended the death penalty, which the trial court imposed. This Court has exclusive jurisdiction of the appeal. *Mo. Const. art. V, sec. 3*. The death sentence is reversed, and the case remanded.

## I.

Although he testified at the guilt phase of his original 1991 trial, appellant did not testify at the 1997 penalty phase, nor did the State introduce any of his earlier testimony. Four of appellant's relatives testified for the defense, relating appellant's physical and sexual abuse as a child by his adoptive father. The State adduced physical evidence from the crime, victim impact testimony, and the testimony of appellant's ex-wife, Kim Posey, as to appellant's past abusive behavior.

Appellant requested Jury Instruction H on his right not to testify. Instruction H was based on MAI-Cr.3d 308.14, a guilt-phase instruction:

> Under the law, a defendant has the right not to testify. No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify.

*MAI-Cr.3d 308.14.* The requested Instruction H was modified — by removing only the words "of guilt" — to reflect that the jury was deciding punishment only:

> Under the law, a defendant has the right not to testify. No presumption may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify.

The court refused the instruction. Appellant raised this issue in the motion for new trial.

The instructions submitted two statutory aggravating circumstances: whether the murder was done for "money or any other thing of monetary value," and whether the murder "involved depravity of mind." The court also instructed on three nonstatutory aggravating circumstances (about Posey's allegations of abuse). The jury rejected four of these aggravating circumstances. It returned a verdict of death, finding only the aggravating circumstance that the murder involved depravity of mind because "the defendant committed repeated and excessive acts of physical abuse upon Jill Lynn Frey and the killing was therefore unreasonably brutal."

## II.

■ The privilege against self-incrimination guarantees the right to remain silent and the right not to have adverse inferences drawn from exercising the privilege. *U.S. Const. amend. V; Mo. Const. art. I, sec. 19;*

*Carter v. Kentucky,* 450 U.S. 288, 305, 101 S.Ct. 1112, 1121, 67 L.Ed.2d 241 (1981). "[T]he Fifth Amendment requires that a criminal trial judge must give a 'no-adverse-inference' jury instruction when requested by a defendant to do so." *Carter,* 450 U.S. at 300, 101 S.Ct. 1112. There is "no basis to distinguish between the guilt and penalty phases of [a] capital murder trial so far as the protection of the Fifth Amendment privilege is concerned." *Estelle v. Smith,* 451 U.S. 454, 462–63, 101 S.Ct. 1866, 1872–73, 68 L.Ed.2d 359 (1981) (footnote omitted). Therefore, when a defendant does not testify in the penalty phase of a capital murder trial, the court must give a "no-adverse-inference" instruction if the defendant so requests.

Appellant did not testify in this penalty phase, and requested the no-adverse-inference instruction. The State concedes that the modified instruction was an accurate statement of the law and that the trial court should have given the instruction. However, the State argues that any error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Neither this Court nor the United States Supreme Court has decided that the failure to give a no-adverse-inference instruction can be analyzed for harmless error. In *Carter,* the U.S. Supreme Court expressly declined to reach this issue. *Carter,* 450 U.S. at 304, 101 S.Ct. 1112.

That Court articulated the test for applying *Chapman's* harmless-error analysis in *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The Court distinguished between "trial error," which is subject to harmless-error review, and "structural defects," which are not. *Id.* at 307–10, 111 S.Ct. 1246. Trial error occurs "during the presentation of the case to the jury, and … may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307–08, 111 S.Ct. 1246. A structural defect, on the other hand, affects "the framework within which the trial proceeds, rather than [being] simply an error in

the trial process itself." *Id.* at 310, 111 S.Ct. 1246.

■ Applying *Fulminante,* the failure to give a requested, no-adverse-inference instruction is subject to harmless-error review. The danger in refusing a no-adverse-inference instruction is that "the jury will give evidentiary weight to a defendant's failure to testify." *Carter,* 450 U.S. at 305, 101 S.Ct. 1112. Such an error in the trial process does not rise to the level of a structural defect. This conclusion accords with that of most jurisdictions. *See, e.g., Hunter v. Clark,* 934 F.2d 856, 859–60 (7th Cir.1990), *cert. denied,* 502 U.S. 945, 112 S.Ct. 388, 116 L.Ed.2d 338 (1991); *Finney v. Rothgerber,* 751 F.2d 858, 864 (6th Cir.1985), *cert. denied,* 471 U.S. 1020, 105 S.Ct. 2048, 85 L.Ed.2d 310 (1985); *Richardson v. Lucas,* 741 F.2d 753, 755 (5th Cir.1984); *Burns v. State,* 699 So.2d 646, 651–52 (Fla.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1063, 140 L.Ed.2d 123 (1998); *Beathard v. State,* 767 S.W.2d 423, 431–33 (Tex.Crim.App.1989); *James v. Commonwealth,* 679 S.W.2d 238, 239 (Ky.1984), *cert. denied,* 470 U.S. 1086, 105 S.Ct. 1849, 85 L.Ed.2d 147 (1985); *Franklin v. State,* 98 Nev. 266, 646 P.2d 543, 545–46 (1982); *Parker v. State,* 425 N.E.2d 628, 630 (Ind.1981); *Richardson v. State,* 402 So.2d 848, 852 (Miss.1981).

■ Here, however, the error was not harmless. The one aggravating circumstance found by the jury was based on physical evidence. That finding is undisputed. "This does not end the evaluation of prejudicial effect, however. The evaluation of the aggravating and the mitigating evidence offered during the penalty phase is more complicated than a determination of which side proves the most statutory factors beyond a reasonable doubt. Moreover, under no circumstance must the jury impose a sentence of death." *State v. Johnson,* 968 S.W.2d 686, 701 (Mo. banc 1998). Under Missouri law, the jury has discretion to assess life imprisonment even if mitigating factors do not outweigh aggravating factors. *State v. Brooks,* 960 S.W.2d 479, 497 (Mo. banc 1997); *Section 565.030.4(4) RSMo 1994.* In light of this discretion, the prejudice against a defendant who invokes the privilege — prejudice which

is "inescapably impressed on the jury's consciousness" — is not purely speculative as the State suggests. *See Carter*, 450 U.S. at 301 n. 18, 101 S.Ct. 1112.

■■■ The State further argues that the error was harmless because the prosecutor never commented on appellant's silence to the jury. Adverse comment on a defendant's failure to testify is an independent violation of the Fifth Amendment. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The refusal of a no-adverse-inference instruction also violates the Fifth Amendment. *Carter*, 450 U.S. at 301, 101 S.Ct. 1112. The trial court must give a no-adverse-inference instruction if requested by the defendant, whether or not the prosecutor makes any adverse comment. *Id.* at 301–303, 101 S.Ct. 1112. Generally, leaving the jury with no guidance on the Fifth Amendment privilege is more harmful, because "the inferences drawn by the jury [from a defendant's silence] may be unfairly broad." *Id.* at 301 n. 17, 101 S.Ct. 1112.

The State also asserts that since defense counsel discussed with the jurors appellant's right not to testify, there is no prejudice from the failure to give the instruction. During general voir dire — five days before jury deliberations — defense counsel told the venire that appellant had the right not to testify and asked whether any veniremember would draw an adverse inference from appellant's silence. Statements by defense counsel, however, "cannot have had the purging effect that an instruction from the judge would have had." *Id.* at 304, 101 S.Ct. 1112. Therefore, the failure to give the requested instruction was not harmless beyond a reasonable doubt in this case.

### III.

Because appellant's sentence is reversed, his other arguments need not be reached. However, one other point raises an issue from the 1991 guilt-phase proceedings.

Before appellant's 1991 trial, at a pretrial hearing, the State introduced a prior Georgia burglary conviction, in order to charge appellant as a prior offender. *Section 558.021 RSMo 1994*. Appellant claimed that the Georgia conviction was invalid because he had no attorney, and, consequently, the prior conviction could not be used at trial. The trial court admitted the Georgia conviction, finding that appellant had waived counsel. The State proffered no other prior convictions.

Appellant testified at trial. During the guilt phase, the State impeached appellant with the conviction. *Section 491.050 RSMo 1994*. In addition, in the State's guilt-phase closing argument the prosecutor stated: "Lastly, [defense counsel] says you shall assess the credibility of the Defendant. She will match his credibility with anyone. A convicted felon?" The trial court also instructed the jury that they could weigh the prior conviction against appellant's credibility.

In his first appeal, appellant argued that the trial court erred in admitting the Georgia conviction. Appellant cited *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), where the U.S. Supreme Court reversed a death sentence because one aggravating circumstance was based on an invalid prior conviction. On June 20, 1995, this Court decided the first appeal, distinguishing *Johnson* because:

> Unlike Johnson, Storey's prior conviction has not been reversed. In fact, the record shows no evidence that Storey even filed for post-conviction relief in Georgia. Until Storey secures a reversal, *Johnson* does not apply. Thus, the trial court did not err — plainly or otherwise — in admitting the Georgia judgment, certifying Storey as a prior offender, or listing the conviction in Instruction 25.
>
> Moreover, Storey's bare allegation that the Georgia guilty plea was without counsel does not justify a continuance or record extension. Storey's remedy is the same as Johnson's: obtain a reversal of the prior conviction, then challenge the death penalty by post-conviction proceeding.

*Storey*, 901 S.W.2d at 896 (citations omitted). Later, in September 1996, the Superior Court of Berrien County, Georgia, granted appellant's writ of habeas corpus, vacating the Georgia conviction. It held that appellant's purported waiver of counsel was inef-

fective. Accordingly, appellant again argues that his conviction must be reversed.

■ A felony conviction violating the defendant's right to counsel is invalid. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), *cited in Loper v. Beto,* 405 U.S. 473, 481, 92 S.Ct. 1014, 1018, 31 L.Ed.2d 374 (1972). Such void convictions are inadmissible to bolster guilt or punishment in a subsequent proceeding against the same defendant. *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), *cited in Loper,* 405 U.S. at 481–82, 92 S.Ct. 1014. Using a constitutionally invalid conviction "to impeach a defendant's credibility deprives him of due process of law." *Loper,* 405 U.S. at 483, 92 S.Ct. 1014.

■ The State concedes error. The question becomes whether the error is harmless. *Chapman,* 386 U.S. at 24, 87 S.Ct. 824. Not all constitutional errors require reversal. *Fulminante,* 499 U.S. at 306, 111 S.Ct. 1246. Harmless-error analysis is appropriate where the erroneous admission of evidence violates the defendant's due process rights. *Id.* at 309–312, 111 S.Ct. 1246. *Loper* violations are subject to harmless-error analysis. *Richardson v. State,* 577 S.W.2d 653, 655 (Mo. banc 1979); *see Loper,* 405 U.S. at 480, 92 S.Ct. 1014; *Agee v. Wyrick,* 546 F.2d 1324, 1325–26 (8th Cir.1976).

■ To determine whether constitutional error is harmless, this Court reviews four factors: (1) whether violations were repeated, (2) whether the trial court made any curative effort, (3) whether exculpatory evidence is transparently frivolous, and (4) whether evidence of guilt is overwhelming. *State v. Dexter,* 954 S.W.2d 332, 340 n. 1 (Mo. banc 1997).

■ Although the trial judge took no curative action, the other three factors are dispositive in this case. The State referred to the prior conviction only twice in front of the jury, once in its cross-examination of appellant and once in closing argument. It is apparent from the record that the State was not attempting to develop a "theme" of emphasizing the prior conviction to infer appellant's guilt. *See id.* at 340. Moreover, appellant's defense is transparently frivolous,

and the evidence of his guilt is overwhelming. At trial, appellant claimed that he was forced into the victim's apartment by his ex-wife's uncle, who committed the murder. He did not mention this at any time to police officers investigating the murder, either in his initial interview or in his confession at the police station. Appellant confessed to arming himself with a knife, climbing the victim's balcony, entering her apartment, and struggling with her. He stated that he took her car. He confessed that the next day he returned to conceal evidence: he wiped down everything he had touched, cleaned under the victim's fingernails with her toothbrush, and removed a briefcase that he had handled. These confessions were corroborated by physical evidence. Police officers found the briefcase and bloody clothes in a paper bag hidden in a dumpster as appellant described. They found the victim's keys in a nearby lake, where appellant confessed to throwing them. Appellant left his bloody palm print at the scene. Soil from the ground beneath the victim's balcony was found on her balcony and in her car. Fibers matching appellant's shirt were also found in the car. Finally, the victim's blood was discovered on appellant's shoes and inside his apartment. The erroneous admission of the invalid conviction was harmless error. This point is denied.

## IV.

The death sentence is reversed, and the case is remanded for proceedings consistent with this opinion.

All concur.